## HOPKINTON *vs.* SMITH & al.

Upon *certiorari* the court simply quashes the proceedings, and does not proceed to render such judgment as the court below should have rendered.

Before the passage of the statute of June 20, 1840, providing for the election of Road Commissioners, it was the established practice in the court of common pleas to refer petitions for the discontinuance of highways to the same committees which had passed upon the question of laying them out; and after the passage of that act, all such petitions were, by a rule of that court, uniformly referred to such commissioners. Such a rule of court was well adopted, and the Revised Statutes have made no change in the law in this respect.

PETITION for a *certiorari*, setting forth that the respondents, on the 9th of July, 1842, filed their petition in the court of common pleas, praying that a certain highway might be laid out in the town of Hopkinton ; which petition was referred to the road commissioners, and, upon their report, a highway was laid out over part of said route, March term, 1843 ; that on the 14th of August, 1843, the town of Hopkinton filed a petition for a discontinuance of a part of it, said town having voted to discontinue ; and on the 15th of August, A. D. 1843, Abram Brown and others filed in the clerk's office a petition that a certain new highway might be laid out; that at the September term of said court the petition of the town for a discontinuance was committed to the road commissioners, with instructions to inquire and report to the court whether any change of circumstances in any

matter affecting the expediency of laying out said highway, has occurred since the same was laid out, so that the same is no longer necessary, and should be discontinued by reason of the change, and, if so, to report the nature of the change, with the particular circumstances; that at the same time, a commission was issued to the commissioners, on the said petition of Brown and others, directing them to report to the court whether it was expedient to lay out a highway on said route; that at March term, 1844, the road commissioners, to whom the petitions were committed, reported (upon the petition of Brown and others,) that it was inexpedient and improper that the burden of making and maintaining a highway upon said route should be imposed upon the towns of Hopkinton and Henniker, and (upon the petition for discontinuance,) that in their opinion no change of circumstances had occurred since the highway was laid out, so that the same or any part thereof was no longer necessary, and should be discontinued by reason of such change of circumstances; that they reported farther, that they had examined the two leading routes for a highway from Henniker village to Hopkinton, viz: the one laid out by the commissioners last season, and the one on the south side of the river, offered as a substitute for the first route, (the latter being that proposed in the said petition of Brown and others,) and that they were decidedly of opinion that the route offered as a substitute for the one already laid out would better accommodate the public generally, and could be built for less than one half the expense of the other route, and that the road when built would be nearly or quite as good as the one already laid out; that at the term to which said reports were returned, the town of Hopkinton appeared, objected to the reports, and filed the affidavits of the road commissioners, setting forth that they acted, as they believed, in conformity to their commission upon the petition for discontinuance, supposing they could only report whether there had been any change of circumstances, in any manner affecting the expediency of discontinuing the highway since the same was laid out, and that they were of opinion that no change had occurred, so that the same was no longer necessary and should be discontinued by reason of such

change ; but that, if they had considered that they were empow- ered so to do, they would have discontinued the highway, or a part of it, and laid out the substitute, or a part of it, proposed by the petition of Brown and others, which was before them at the same time ; and thereupon the counsel for the town of Hopkin- ton moved the court of common pleas to recommit the reports to the commissioners, with instructions that, by the Revised Statutes of 1842, they were constituted and empowered to take full cog- nizance of the whole matter, and had full authority and power to discontinue the road laid out on the petition of Smith and others, and to substitute the route proposed by the petition of Brown and others, if, in their opinion, the same should be done, whether there had been any change of circumstances in any matter affecting the expediency of discontinuing the same. But the court rendered judgment on the reports.

The petition then alleged that, for the reasons so assigned, the record and proceedings are illegal and void, and prayed that they might be quashed, and such proceedings be had therein as justice required.

*Perley & Ainsworth*, for the petitioners.

*Fowler*, for the respondents.

PARKER, C. J. The office of a *certiorari* is to bring up the proceedings in the court below, that they may be examined, and, if found erroneous, may be quashed. But it would not avail any- thing to quash the proceedings set forth in this petition, if there was error in them. If the proceedings were quashed, that would not reinstate the petitions which have been disposed of, nor au- thorize any farther proceedings upon them. Upon *certiorari*, the court simply quashes the proceedings, and does not proceed to render such judgment as the court below should have rendered.

If the court of common pleas was in an error in its construc- tion of the law, the petition for discontinuance should have been committed to the commissioners, in the first instance, without in- structions ; or, upon the return of the report, should have been

Hopkinton *v.* Smith.

recommitted, according to the motion. But it is clear that we could not, upon quashing these proceedings, make any such order ; nor do we perceive how the common pleas could make any such order, were the proceedings quashed upon this petition. The common law jurisdiction upon *certiorari* after judgment is to quash or affirm the proceedings. 2 *N. H. Rep.* 210, *Huse* vs. *Grimes ; Ditto* 123, *Petition of Farwell ;* 3 *Mass. R.* 306, *Melvin* vs. *Bridge ;* 11 *Mass. R.* 466, *Commonwealth* vs. *Ellis ;* 10 *Wend.* 168, 179, *Baldwin* vs. *Calkins.* They may be quashed in part and affirmed in part. 5 *Mass. R.* 423, 424, *Commonwealth* vs. *Blue Hill Turnpike ;* 1 *Salk.* 236 ; 1 *Tidd's Practice* 331, (1 *Am. Ed.*) In some of the States a *certiorari* operates as an appeal. But this seems to be by statute. 3 *Stewart's R.* 357, *Boyd* vs. *Woodfin.* If the petitioners are right in their construction of the statute, an application for a *mandamus* to the common pleas, before the termination of the proceedings, might perhaps have furnished a remedy. Whether their construction is right or not, the proceedings upon these petitions furnish no bar to subsequent petitions of a like character. But one object of this application was, doubtless, to obtain the opinion of this court respecting the construction of the statute ; and, to prevent farther question upon this point, we have considered it as if our judgment upon it might have some operation. If the proceedings were erroneous, we might quash them.

The statute formerly authorized the court of common pleas to lay out highways in certain cases, and also authorized that court, upon petition of a town which had voted to discontinue a highway, to assent to a discontinuance. *N. H. Laws (Ed.* 1815,) 386 ; *Ditto (Ed.* 1830,) 574. The jurisdiction upon a petition to lay out a highway was formerly examined by a hearing in court, upon the question whether a committee should be appointed for that purpose. This was found to consume much of the time of the court, and a change of the practice took place, by which the petition was committed, in the first instance, to a committee for a hearing on the merits. Instances occurred where towns which had made strong but unsuccessful opposition to the laying out of a highway, almost as soon as the judgment laying it out was en-

tered, held meetings, voted to discontinue, and applied to the court for its assent. No proceedings were, of course, had for the purpose of constructing the way. If an indictment was procured, a motion was made to the court for a continuance, until the application to discontinue could be determined; and in this way great delays almost necessarily occurred, somewhat to the reproach of the administration of this part of the law. To remedy the evil above suggested, a practice was adopted of referring the petitions for a discontinuance, so far as was practicable, where the road had not been constructed, to the same committee that had reported in favor of laying out the highway. If any circumstances had occurred so that the way was no longer necessary, that change could be more readily and effectually made apparent to that committee than to any other. If none had occurred, there seemed to be no propriety in sending the petition to discontinue, to another body of men, to revise the decision of the first. Such was not the spirit or intention of the statute which authorized proceedings for the discontinuance of highways. There was nothing in the statute which indicated an intention to grant such review. In fact, there was nothing in the statutes that prevented the court from adopting the practice of refusing, at once, to assent to the discontinuance of a highway which had been laid out, but not constructed, unless it were clearly shewn that there had been a change of circumstances, affecting the case since it had been laid out. But the course of a reference to the same committee was deemed more expedient.

A statute was passed June 20, 1840, providing for the election of Road Commissioners, the third section of which enacted that all petitions relating to roads, which should be presented to the court of common pleas in any county, should be referred to the commissioners, who were required " to examine into the prayer of the petition, and report thereon in the same way and manner as is now provided for committees appointed by said court of common pleas," &c. It admitted of doubt whether this statute in its terms embraced petitions for discontinuance of highways, and a rule was adopted by this court, July term, 1840, under its authority to adopt rules for the government of its own proceedings

Hopkinton v. Smith.

and those of the common pleas, prescribing precisely the course which was adopted by the common pleas in this case.

On the passage of the Revised Statutes, in 1842, a question was made whether power was given to the commissioners to determine finally the question of discontinuance. The 4th section of the 50th chapter enacted that, if no sufficient objection should be made, all petitions relating to roads should be referred to the Road Commissioners, &c. ; and the 4th section of the 51st chapter required them to make report to the court in each county in which any highway laid out, altered, or discontinued by them, should pass. If there had been nothing farther upon the subject of discontinuance, it might have been held that here was by implication a power in the commissioners to discontinue. But the 2d section of the 54th chapter is explicit, that no vote of discontinuance shall be effectual without the consent of the court of common pleas, if the road was not laid out by the selectmen, or if laid out by them during the pendency of a petition in the common pleas for laying it out, or if an indictment or information for neglect to make or repair it was pending at the time of the vote to discontinue. It was clear, therefore, that the duty of assenting or dissenting still remained with the court. If the petition were referred to the road commissioners, and a report was made in favor of a discontinuance, the court were not bound to assent, if the circumstances indicated that the case was merely in the nature of an appeal from one board of road commissioners to another. And if the members of the court had been so desirous of avoiding all responsibility as to adopt the practice of having no judgment of their own in guiding their assent or dissent, depending entirely upon the opinion of the committees, it was quite clear that contests were likely to arise in elections of road commissioners from year to year, with reference to the discontinuance of highways laid out the previous years ; and it could certainly furnish no especial reason why the court should devolve its duty of assent or dissent upon the commissioners in such cases, that some of them might have been elected under pledges to reverse the doings of their predecessors in relation to particular highways, duly laid out at great expense, but not constructed. A state of

the law which should have required the court to come to that result, would be obnoxious not merely to the objection that it encouraged corruption in elections, but also that it occasioned vexatious delays and expenses. The laying out of a highway, after the most careful investigation and consideration, would have given no assurance whatever that it was to be made, but might be merely the signal for an excited canvass in the election of the next board of commissioners, a vote to discontinue, a petition for an assent, a new hearing before other men, a report adverse to all that had been done before, and an assent of the court, as a *matter of course*, that the whole proceedings should be rendered null and void.

The court was certainly well satisfied to find that the court of common pleas was no such mere machine in this matter. It was believed to be in entire conformity with the provisions of the law, to refer the original question of the laying out of the highway to the hearing and judgment of the commissioners; accepting their report without any farther hearing upon the merits, if the proceedings had been regular, (as had been the practice for several years, when the court committed the petition to a committee for a hearing and report,) and to exercise the jurisdiction over its assent or dissent to a vote of discontinuance by such inquiry as should inform the court whether any thing had arisen, subsequently to the laying out of the highway, which rendered it no longer necessary; assuming that the judgment by which it was laid out had been properly rendered, so long as it was not shewn that any legal errors had occurred in the proceedings; and the rule was therefore left to its former operation. We are of opinion that the proceedings respecting the highway, as detailed in the petition, show very conclusively the expediency of the rule. But however that might be, we have no hesitation in holding that it was well adopted, that the Revised Statutes have not abrogated it, and that it was, therefore, the duty of the common pleas to follow it. Of course we are of opinion that there is no error in their proceedings.

*Petition dismissed.*