## Moore & a. v. Sandown.

A *certiorari* will be granted to quash the proceedings of the court of common pleas, upon a petition for the discontinuance of a highway, if the court have erred in giving a construction to a statute relating to the interest of a road commissioner.

In the year 1847, a petition for the discontinuance of a highway was pending in the court of common pleas. In the year 1839, one of the persons who afterwards constituted the board of road commissioners in the year 1847, had signed a petition for a highway between the same termini. This petition was entered in court, but was afterwards dismissed. It was objected that this person was incompetent to act as a commissioner upon the petition for discontinuance, because he was interested by having signed the petition for the highway. The objection was sustained by the court, and another person was appointed to act in his stead, and the board thus constituted reported that the road ought to be discontinued. Upon a petition for a *certiorari*, by the original petitioners for the road, it was *held* that the commissioner was not interested within the meaning of the act of July 2, 1846, and that the proceedings must be quashed.

PETITION for a *certiorari.*

It was alleged that at the August term, 1843, of the court of common pleas for the county of Rockingham, a petition for a highway was presented to the court, which, at the August term, 1845, was referred to the road commissioners. At the February term, 1846, a report of the commissioners, laying out a highway according to the prayer of the petitioners in the town of Sandown, was returned and accepted. At the February term, 1847, the town of Sandown was indicted for not building the road. On the first day of January, 1847, the town voted to discontinue a certain part of the highway, and at the September term, 1847, petitioned the court that it might be discontinued, and represented to the court that True S. Locke, one of the road commissioners, was interested in the petition for discontinuance, and prayed the court to appoint some one in his stead, and proved to the court that Locke was a petitioner upon a former petition of John Moore and others, for a highway over the same route as that described in the petition

on which the highway was laid out. This former petition was entered at the September term, 1839, and dismissed. Upon the hearing, the court were of the opinion that Locke was interested in the petition for discontinuance, and ordered that one Sias Noble should act therein instead of Locke. The petition for the discontinuance of the highway was ordered by the court to be referred to John Page and John Scammon, two of the road commissioners for the county, and Sias Noble as a substitute for Locke, the other road commissioner. At the September term, when the indictment came on to be tried, the town of Sandown was defaulted, and the court ordered that, if a report discontinuing the road should be filed within sixty days from the adjournment of the court, the town should not be fined, otherwise a fine of $1,000 should be imposed as of that term. An agent was appointed to build the road. Scammon and Noble, within the period of sixty days, filed with the clerk their report, that the part of the highway referred to ought to be discontinued.

The petitioners suggested the following errors in the records and proceedings of the court.

I. That Locke, being one of the road commissioners, and not being interested in the petition for discontinuance, was removed from the board, and Noble appointed to act in his stead.

II. That Locke was removed from the board of road commissioners, to which by law the petition should have been referred, for a reason not well founded in law.

III. That it appeared by the commission to Scammon, Page and Noble, that Noble was appointed by the court " as a substitute for True S. Locke, the other road commissioner, it appearing to the court that said Locke was interested in a former petition."

1V. That the report, discontinuing the highway, was signed by one only of the road commissioners for the county.

The petition prayed that the records and proceedings of the court of common pleas, upon the petition of the town of Sandown for the discontinuance of the highway, should be adjudged erroneous and void.

At the September term, 1847, of the court of common pleas, the town of Sandown filed a bill of exceptions, which was allowed by the presiding justice. The exception was that the court adjudged Locke to be interested, because he was one of the petitioners on a petition of John Moore and others, for a highway over the same route which was entered and dismissed at the September term, 1839, and appointed Sias Noble to act upon the petition for discontinuance, instead of Locke.

*French*, for the petitioners.

Locke had not any interest in the petition for the discontinuance. He was not a citizen of the town and had no pecuniary interest, and this is the kind of interest intended by the statute, which refers to the interest of a person owning property which would be increased in value by the road. We do not contend that the court should receive a report from a person who is proved to be partial, for that is prohibited by the Bill of Rights. It is very evident that the court should be cautious about removing a road commissioner, unless his interest be of a tangible and definite kind, and such as would naturally induce him to be partial. But in the present case, all that Locke did was to express an opinion in the year 1839, that the public good required a highway over this route. This was the whole matter, and the commissioners and the court declared that his opinion was correct. The judgment of the court remains in force, and is not reversed by a petition to discontinue the road. That alleged only that a change of circumstances had happened, which showed that the road ought to be discontinued.

Locke has said nothing more than that the judgment of

the court laying out the road would be correct. Even if he had said that the road ought or ought not to be discontinued, it would not be enough to disqualify him. Perhaps such an expression of opinion might disqualify a juror, but a commissioner occupies a very different position. He, as one of the public, has an interest in highways, and there is no reason why he should not express an opinion concerning them. It would be impossible to select an impartial board of road commissioners, if the standard of impartiality were made so high as to exclude every person who can be proved to have entertained an opinion concerning the public highways in the county. But the situation of a juror is very different. He decides upon questions of private right, and of the guilt or innocence of offenders, and he cannot properly entertain any opinion on the matters that may come before him until he has heard the evidence. And although the punishment of an offender is a matter of public interest, the constitution provides that he shall be impartially tried, and it is for this reason that so many restrictions are thrown around jurors. A commissioner certainly need not be any more impartial than the justices of the court, but no one supposes that it would be an objection to a judge that he had formed an opinion in cases similar to that before him. In the case of *Wilbraham* v. *The County Commissioners of Hampden,* 11 Pick. 322, it was held that the circumstance that a county commissioner is a taxable inhabitant of a town through which a contemplated road is to pass, does not constitute such an interest as to disqualify him from acting upon the question of the common convenience and necessity of laying out the road, and to the same effect is the case of *Danvers* v. *The County Commissioners,* 2 Met. 185.

If it would be an objection that one of the commissioners, on the petition to discontinue the road, was one of the board who laid out the road, then Page was an incompetent commissioner, for he acted in laying it out.

*Stickney*, for the town of Sandown.

A writ of *certiorari* does not lie in this case, even if the reasons for which the court excluded Locke were insufficient. In order to sustain this writ, there must be some error in a matter of law, as in the case of the *State* v. *Thompson*, 2 N. H. Rep. 236, in which case the court of common pleas erroneously abated a tax. There is a difference between erroneous reasons and insufficient reasons. In this case, the court were acting within their jurisdiction. In *Farewell's Case*, 2 N. H. Rep. 123, the court refused to interfere because the justice had authority either to accept or reject a report. The court had such a power in the present case, and if any error at all was committed, it was merely because the court acted upon insufficient reasons. It was competent for the court to judge whether Locke were interested or not, and in deciding that he was interested they merely performed a duty.

It is unnecessary that the interest which would disqualify a commissioner from acting, should be such an interest as would render a witness incompetent to testify. It is enough if the commissioner have such an interest, or have expressed such an opinion as would disqualify a juror. Locke had formed and expressed an opinion on the very matter that afterwards would come before him. He believed he should be benefited by the road, and no one would say that a juror, who had expressed an equally strong opinion about a case, was a proper person to try it. In the case of the *Petition of Nashua*, 12 N. H. Rep. 425, it was held that a road commissioner, who was a citizen of the town through which a road passed, was incompetent to act as a commissioner upon the petition for the discontinuance of the road. *Rollins* v. *Ames*, 2 N. H. Rep. 349.

GILCHRIST, C. J. We are of opinion that the court of common pleas has acted erroneously in removing Locke from the board of road commissioners, and substituting

Moore *v.* Sandown.

Noble to serve in his place upon the petition for the discontinuance, and that Locke had not such an interest as disqualified him from acting upon the petition. The only interest alleged is, that in the year 1839 Locke was one of the petitioners for a highway over this route. His signature to that petition is, at most, only an expression of his opinion, that in year 1839, eight years before the last petition for the highway was filed, there was occasion for a new highway over the route described in the last petition, and in the petition for discontinuance. He might, at that time, have had sufficient reason to entertain such an opinion, and yet in the period of eight years that intervened, numerous circumstances might have happened to change his views. In adjudicating upon a question which is to be determined merely by the lapse of time, it is impossible to fix any definite period in which the views of a person might be supposed to have become modified and changed from what they originally were. The most that can be done is, to approximate to accuracy by reflecting how frequently and in how short a time the opinions of men are changed, even upon subjects upon which they supposed, in the beginning, their judgments were definitely formed. In such a case as the present, it is very evident that the line cannot be accurately drawn. How many years must pass before a man may be supposed to have become freed from such a bias as signing this petition may imply, and before he may be considered to be impartial ? If eight years, the ninth part of the allotted life of man, will not have this effect, can we say that sixteen years will do so, or even thirty-two years ? But, in truth, such an expression of opinion should not incapacitate Locke from acting, because a judgment that it would incapacitate him, would render necessary a degree of freedom from bias which cannot be expected to exist in men so long as they are fallible. As it is immaterial in what way the alleged interest is proved to exist, provided it be proved, it would be necessary to go but one step further, and show

by circumstantial evidence and by remarks made in conversation, when a subject of such public interest was discussed, that eight years ago Locke must have entertained the opinion that the public interest required a highway between these termini, and thereby exclude him from acting. It is very evident that the adoption of a principle so difficult to be put in practice, would introduce greater and more numerous evils than it would avoid. But it would be the necessary result of a decision that signing the original petition, which is only the expression of an opinion, would show such a degree of partiality that he ought not to act in this matter. We do not, however, intend to go beyond the precise question raised by the case, and our judgment simply is that the signature of the petition by Locke, in the year 1839, did not authorize the court to remove him from the board of road commissioners, and substitute Noble in his place.

As to the question whether a writ of *certiorari* will lie in this case, it is said by Mr. Justice *Greene,* in the case of *Huse* v. *Grimes,* 2 N. H. Rep. 210, that a writ of *certiorari* lies to reverse the doings of inferior jurisdictions, whose powers are given them by statute, whose mode of proceeding is unknown to the common law, and who render their doings effectual, not by a judgment, technically so called, but by orders to be executed in a summary way, such as orders for the laying out of highways, and for the removal of paupers. So in the case of *The State* v. *Thompson,* it was said by *Richardson,* C. J., that the power to issue a *certiorari* is given to this court to keep inferior courts within the bounds of their jurisdiction, and where the court of common pleas had no authority to order an abatement in a tax, it was held that there was good ground for granting a *certiorari.*

In *Robbins* v. *Bridgewater,* 6 N. H. Rep. 524, it was held that the proceedings of the court of sessions, in laying out a highway, might be quashed upon *certiorari.* The office of

a *certiorari* is to bring up the proceedings in the court below, that they may be examined, and if found erroneous, may be quashed. *Hopkinton* v. *Smith*, 15 N. H. Rep. 152.

In the case of *Wilbraham* v. *Commissioners of Hampden*, 11 Pick. 323, the question was raised upon a petition for a *certiorari* whether one of the commissioners was disqualified from acting, by his alleged interest, and also in the case of *Danvers* v. *Commissioners of Essex*, 2 Met. 185.

By the first section of the act of July 2, 1846, it is provided that upon all petitions relating to roads, if any commissioner be interested in any such petition, he shall not serve, but the vacancy shall be filled by the court of common pleas in which such petition is pending. In this case, the question before the court of common pleas was, whether Locke was so interested in the petition for the discontinuance that he was disqualified from acting as a commissioner in relation to it, by this section. Whether the fact that he was one of the petitioners for the highway, in the year 1839, disqualified him from serving, was a question of law, to be determined by the court, and having been adjudged to be thus interested, he was removed and another person was put in his place, and the board of commissioners thus constituted, or a majority thereof, reported that the highway ought to be discontinued. These proceedings are sought to be quashed, on the ground that the court erred in holding that Locke was disqualified by having such an interest as was contemplated by the statute. Now the court of common pleas had the power and right to determine, in the first instance, whether a disqualifying interest existed. Their judgment, however, must be rendered subject to the supervision of this court, whether upon the facts stated Locke was disqualified. The court of common pleas are not to determine, without appeal, whether this interest existed, and whether it is such an interest as the Legislature intended. It is not consistent with the practice in any case, unless some exception may exist which does not now occur to us,

that upon questions of law involving the rights of parties, the judgment of the court of common pleas should be final. Where proceedings of this kind are had in the court of common pleas, in consequence of an error of the court on a question of law, a proper case is presented for the exercise, by this court, of its supervisory power. The judgment of the court, therefore, is, that the *certiorari* must go. The judgment of the common pleas accepting the report laying out the highway, consequently, remains in force, but the proceedings relating to the discontinuance of the road must be quashed.