## PETITION OF THE TOWN OF HOPKINTON.

In a petition for the discontinuance of a highway, laid out but not constructed, the road commissioners may lawfully consider the extension of a railroad, which, at the time the highway was laid, had been granted, and, to a certain point, finished, as a " change of circumstances affecting the question of the expediency of discontinuing the highway."

Such changes, with their bearing upon the case, are required to be stated with reasonable certainty, but great minuteness of detail is unnecessary in the commissioners' report.

PETITION for the discontinuance of a highway in Hopkinton.

The petition, which prayed for the discontinuance of a highway not constructed or opened for public travel, having been referred to the road commissioners, their report was presented to the court of common pleas in this county. The report, after reciting due notice to all interested, an examination, by the commissioners, of the highway and all roads connected therewith, and a hearing of all parties desiring to be heard, proceed to state as follows: " At the time said

highway was laid out, the Concord and Claremont Railroad had been for a short time in operation from Concord to Warner, the charter at that time authorizing its construction from Concord to Claremont. Since that time, said railroad has been extended to Bradford. The Contoocook Valley Railroad was nearly completed from Contoocookville, in Hopkinton, to Hillsborough, and immediately after put in operation between those points. The New Hampshire Central Railroad was chartered from Manchester, through Bradford, Goffstown, Weare and Henniker, to Claremont, and was then laid out to Henniker, and partially completed from Manchester to the Oil Mill Village, in Weare. Since that time said railroad has been completed and put in operation from Manchester to Henniker. The effect of the completion of these railroads has been to put the country through which they extend, in direct connection, by railroad, with Concord and Manchester, and thus to change the travel from other highways on to said railroads, and also to afford convenient and desirable markets at these places; and they also afford a railroad connection with Fisherville, thereby superseding the necessity of said highway, so far as the same was necessary to facilitate the communication between said country and Fisherville and vicinity, for which purposes it appeared said highway was in part originally laid out. It also appeared that the business between Hopkinton and the places beyond said Fisherville and vicinity, to accommodate which, in connection with the purpose aforesaid, said highway was originally laid out, had decreased since the highway was thus laid out, and that said highway would now be confined to a limited use by a very few individuals. It also appeared that the jail for Merrimack county had, since the laying out of said highway, been removed from Hopkinton to Concord, thereby rendering said highway unnecessary, as furnishing a more convenient communication between the northerly portions of said county and the jail. We regard the removal of the jail and

the general decrease of business in Hopkinton, and between Hopkinton and Fisherville and vicinity, as changes of circumstances which have occurred since said highway was laid out, so affecting the expediency of laying out said highway as that the same is no longer necessary, and should be discontinued; and that these changes of circumstances, taken in connection with the effects of the railroads before mentioned upon the public travel, entirely supersede the necessity of said highway."

The original petitioners for said highway appeared and objected to the acceptance of said report, and filed the following exceptions thereto:

1. The report does not state how far the proprietors had proceeded in the construction of the New Hampshire Central Railroad, at the time of laying out said highway, or in what condition the road then was.

2. The report does not state what was the situation of said railroads, and especially that of said New Hampshire Central Railroad, in respect to the highway in question, or how they could affect it, or whether there was any travel from the line of said railroads, by way of said highway, to be affected by the completion of said railroads.

3. The report does not state how the removal of the jail from Hopkinton to Concord affects this highway, nor does it show anything to enable the court to see that it could affect the highway, either by its location or in any other way.

4. The report does not show any change of circumstances to justify a discontinuance of the highway, finding, in fact, that there was no travel from Warner to Henniker, in this route, to be affected by the railroad; and in regard to the amount of travel in this direction, generally stating no such falling off as to be regarded as even a change, the effect of the whole evidence being to show a decided increase in the travel and of the lumber business since the laying out of the road.

*Bellows*, with whom was *Fowler*, for the original peti-
tioners.

The completion of the railroad, it having been nearly
completed at the time of the laying out of the road in ques-
tion, is no such change of circumstances as would justify
the discontinuance of the road.

In the cases of the petitioners of Littleton and Bethle-
hem, it was held that the laying out of a railroad, and a
partial construction of it, though not finished, so far as to
affect then the demand for the highway in question, was
such a change of circumstances as would justify the discon-
tinuance.

In that case, the road was in progress towards that
point.

Should the completion, in this case, be regarded as a
change, then, wherever any step is taken it would be a
change.

Again, the completion of the railroad is not stated to be
the change on which the commissioners rely, though it
seems to be thrown in to make weight.

Should the court think the finishing of the railroads might,
under any state of things, be a change of circumstances, we
should want the commissioners to state the situation of
them, that the court may see whether the completion of the
roads could affect the highway in question.

The changes stated in the last report, on which the com-
missioners rely, are

I.   The removal of the jail from Hopkinton to Concord.

II.   That the business between Hopkinton and the places
beyond, had decreased since the laying out of the highway.

They say that they regard these as changes of circum-
stances so affecting the expediency of laying out the high-
way, that it is no longer necessary, and should be discon-
tinued.   .

And, at the same time, say that these changes, taken into
consideration with the effects of the railroads before men-

tioned upon the public travel, entirely supersede the necessity of the highway.

In fact, the first report gave the changes occasioned by the completion of the railroads the first place in the list.

In fact, it stood alone, except the statement of a gradual decrease of travel in the vicinity of the highway.

But they have now dropped the finishing of the railroads as a direct change, and only refer to it incidentally.

As to the removal of the jail from Hopkinton, they do not state how it affects the demand for the road. But the inference is, that the portion of travel heretofore from Fisherville to Hopkinton, to visit the jail, which must be confined to the commitment of debtors and persons accused of crime, is diverted to Concord.

This, of itself, is no such change of circumstances as is intended by the rule.

If it is, then any alteration of residence by a physician, lawyer or other person, would lay the foundation for the discontinuance of a highway.

The change must be something substantive and permanent, and such as might naturally divert a material and substantial part of the public travel. But this is of no such character.

As to the decrease of the travel, nothing is shown in the report that indicates the extent of the decrease of travel.

It is merely stated that the business has decreased, but without stating the extent, or that any substantial or material part of the business which required the road had been cut off.

It is reduced, then, to this, namely, the removal of the jail and the decrease of business.

There always is more or less fluctuation in the amount of travel.

If this is sufficient, then the rule is a nullity, for such changes, or changes like them, can always be shown. And it is easy to see that the report of the commissioners goes,

substantially, to the point that the road ought not to have been laid out at all.

The original petitioners deny, however, that the travel has decreased, but, on the contrary, say it has increased; and, if necessary, they would move to recommit the report, with instructions to report the evidence.

If such proceedings can be sustained, all confidence in the tribunal of road commissioners will be lost.

*J. Minot,* with whom was *George,* for Hopkinton.

Are road commissioners to exercise any discretion, any judgment, or not? If the affirmative be conceded, then all is right; no exception can be taken to their doings in this case.

·  It is sufficient that the commissioners report the nature of the circumstances upon which they have acted in the case.

The effect of the change of the circumstances, or its weight in determining the public necessity of continuing the highway, or the want of such necessity, and the propriety of its discontinuance, are matters, we suppose, resting solely with the commissioners, and to be determined by them.

Slight circumstances may be sufficient in some cases, and greater may be required in others.

The court will not re-hear the evidence and re-judge the facts, but will take the conclusions of the commissioners, in all such matters, as correct.

WOODS, J.   Upon a petition to the court of common pleas, for their assent to the vote of a town to discontinue a road, there is but one course to be taken.  The necessity of the case, the provisions of the statute and the uniform practice of the courts for many years, require that the merits of the case be referred to the road commissioners for examination.   In order that such reference may not take the form and effect of a mere appeal from one board of commissioners

to another, in cases in which the highway in question has not, in fact, been opened for public travel, the court have adopted a rule, that in such cases the commissioners be required to examine and report whether any change of circumstances, in any matter affecting the expediency or necessity of the highway, has occurred since the same was laid out, so that the same is no longer necessary, and should be discontinued by reason of such change of circumstances; and if so, to report the nature of the change, with the particular circumstances, and how they affect the case. *Hopkinton* v. *Smith*, 15 N. H. Rep. 152; *Petition of Nashua*, 12 N. H. Rep. 425.

The commissioners, having assumed to do so in the present instance, exceptions have been taken to their report, on the ground that they have not, in some particulars, conformed to those instructions.

The changes which may occur to affect the expediency or necessity of constructing a particular road or bridge, in a country undergoing a constant change, are various and incalculable. What may be sufficient to justify the abandonment of a projected improvement of that sort, it would be wholly impossible to predetermine, or even to indicate the nature or subject-matter of such changes. All that can be done is to ascertain from the report that substantial changes have intervened, and that they are such, that they may reasonably be supposed to influence the course of public travel, or the expenses of constructing the road, and that, in the opinion of the commissioners at least, they actually have varied, or of necessity must vary, the business and wants of the community in a manner pointed out by the report, and to a degree to supersede the need of the contemplated road, and to justify the abandonment of it.

It is wholly without the province of the court to inquire what weight the consideration of these changes ought to have in settling the question thus addressed to the judgment of the commissioners, who obtain by actual survey a knowl-

edge of the face of the country, and whose position and the course of examination which they pursue, ought to enable them to form a sound judgment respecting the business and wants of the inhabitants. The court inspect their report for no purpose but to see if they have pursued the tenor of their commission, and have, among other requisites, reported the existence of changes of circumstances affecting the expediency of laying out the road, described with reasonable clearness the nature of the changes, and with a reasonable perspicuity, pointed out their bearing upon the merits of the case.

It was not the object of the court's rule to require of the commissioners to accompany their reports with maps of the country, or elaborate topographical description. They are not expected to load their reports with histories of the pursuits of the inhabitants, their trade, their markets or their amusements. It is enough if they state, in general terms, the changes that have occurred, and their bearing on the question, without approaching that minuteness of detail, which would enable the court to revise their decisions upon points pertaining peculiarly to themselves.

In short, we think the report in the present case sufficiently clear in describing the changes, and in pointing out their effect upon the case.

It was wholly unnecessary that it should state how far the proprietors had proceeded in the construction of the Central Railroad, at the time the road was laid, it having stated that the railroad was then laid out to Henniker, and partially completed from Manchester to Weare.

It was unnecessary to state, more precisely than the report does state, what was the situation of said railroads in respect to the highway in question, or how they could affect it. We think the report sufficiently shows both the situation of the railroads, with respect to the road in question, and how the completion of these railroads, by opening new avenues of business, new markets and new pursuits among

the inhabitants, have superseded the need of the highway laid out at a time when these changes might not have been foreseen, or but in a small degree estimated.

The same may be said of the third exception. The removal of the jail from the old shire town of Hopkinton might not have been a change of great importance; but it is properly described, and reckoned among the elements of the decline of that village, by reason of which it has become, less than formerly, a place of resort.

The grand features of the change exhibited by the report, are the railroads constructed and in the process of construction, through the country where the road in question had been laid. It is a case which appeals forcibly to the recollections of every one, who has for a few years even, observed the mutations wrought by these great works. The old avenues of travel have been forsaken, and the trade and industry which had previously sustained many of the villages, have been transferred to other places, laid open to a more convenient access by railroads, and localities but little regarded before, have suddenly assumed unforeseen importance from the same cause. The immediate prospect or expectation of the construction of a railroad has, therefore, been justly regarded as a good cause for suspending at least the prosecution of public improvements in their immediate vicinity, till the effect of the railroad, upon the business of the country, can be either safely calculated or actually tested. And road commissioners, in the exercise of the discretion and legal judgment with which they are clothed, have reported the projection and laying and the probability of the construction of a railroad, which, if put in operation, might diminish materially the business which would otherwise probably be done upon the contemplated highway, as a change of circumstances, and it has been holden by this court to be such within the rule. Such was the case of the petitions of Littleton and Bethlehem, cited in the argument.

The present case differs somewhat from that, indeed, for

here the railroad was laid out and in the process of construction, when the highway was laid. But the extension of the railroad into the vicinity of the highway changed, it seems, the aspect of the case in the view of the commissioners. Whether the expectation of the railroad operated upon the minds of the commissioners who laid the highway, by leading them to suppose that the railroad would create new and important uses for it, which, upon the extension of the railroad, turned out otherwise, or whether that board of commissioners put out of view the influence which the railroad, if built, might exert upon the business of the country, does not and need not appear to us. It is easy to imagine either alternative, if necessary. But we have, in fact, nothing to do in the case but to decide whether a railroad, actually built and in operation, is so different a thing from a railroad merely laid out and granted, as that the road commissioners may legally regard such building as a change, if they do in fact regard it as a change affecting substantially the business of the country, in the manner set forth in their report, and, to the extent there indicated, affecting the necessity and expediency of proceeding with the contemplated highway.

And we have no hesitation in saying that they legally might so consider and regard it.

*Exceptions overruled.*