## KNIGHT *v.* COLEMAN.

Where a fence across flats between two farms had been kept up for a long series of years nearly in the same place, but not permanent and stationary, and no continued and adverse possession to the line of the fence for twenty years was shown, it was *held that no legal presumption arose that it was the true bound-ary between the farms, and that its location was only evidence to go to the jury of an agreement and acquiescence of the parties in that line as the true one.

Depositions are inadmissible, of which parts are underscored by the party offer-ing them to attract especially the attention of the jury.

TRESPASS *quare clausum.*

The acts complained of in the plaintiff's declaration, were admitted to have been done, but the defendant claimed the *locus in quo* as his own soil and freehold. It appeared at the trial in the court below, that between the lands of the plaintiff and defendant a cove juts in from the Piscata-qua river, a great part of which consists of flats, or is bare at low water. That the plaintiff's farm lies upon the east side of the cove, and the defendant's upon the west. It ap-peared, also, that a fence had been kept up upon the west side of the cove next the defendant's land, for a long series of years, and the evidence tended to show that it had been nearly in the same place, but not permanent or stationary. The plaintiff offered evidence tending to show that this fence was built, and had been kept up as the dividing line between the farms, and that this was the true line as agreed upon by the parties who had a right to make such an agreement. The defendant offered evidence tending to show that the

fence was put there for the convenience of the occupants of these adjoining farms, without intending to fix the boundary line thereby.  The *locus in quo* would fall to the plaintiff's or defendant's farm, according as this line should or should not be found to be the true boundary line.

The plaintiff's counsel requested the court to instruct the jury that the long occupation of the parties to that division fence raised a legal presumption that it was the true line. This instruction the court did not give, but charged the jury that the existence of the fence for the time it appeared to have been there, was a presumption in favor of its being the true line, and that the plaintiff had the benefit of that presumption, which they should consider in connexion with his other evidence tending to show the establishment of the line as contended for by him.  But that if they believed, from the whole evidence, that the fence was built only for the convenience of the parties who put it there, without any intention of establishing the line between the farms, their verdict should be for the defendant; otherwise, for the plaintiff.

The plaintiff objected to certain depositions being permitted to go to the jury, parts of them having been underscored by the defendant's counsel to attract the attention of the jury.  They were allowed to go to the jury, subject to the exception.  The jury having returned a verdict for the defendant, the plaintiff moved to set aside the verdict and for a new trial.  The questions arising on the motion were reserved for this court.

*Emery* and *Bartlett*, for the plaintiff.

*Christie*, for the defendant.

WILCOX, J.  We think that the instructions were sufficiently favorable to the plaintiff.  If the fence had been maintained for twenty years in the same place, the plaintiff

all the time claiming to own to the fence, that would make an absolute title by adverse possession. But the case does not so find. It is stated that the fence had been kept up for a long series of years nearly in the same place, but not permanent and stationary. Now there is no legal presumption from this in favor of the plaintiff's title. It is only evidence to be submitted to the jury. The case states that the *locus in quo* would fall either upon the plaintiff's or defendant's farm, as this line should or should not be found to be the true one. The location of the fence would then only be evidence of an agreement and acquiescence of the parties in that line as the true line, unless the plaintiff showed a *continued and exclusive* adverse possession for twenty years, which does not appear.

It is further objected to the verdict that certain depositions, on the part of the defendant, were permitted to go the jury, parts of which had been underscored by the defendant's counsel to attract the attention of the jury as being of peculiar importance. And we think that for this cause the verdict must be set aside. If one kind of mark may be put upon a deposition, it will soon be claimed that others may be added, designating the greater or less importance of different parts of the deposition, or to distinguish what is true from what is false. If one party underscores, so may the other. If a deposition may be marked for one purpose, it may for others also ; and it is impossible to foresee what sort of marks and hieroglyphics, and with what significations ingenious men may be disposed to employ. It is important to have a rule upon this subject, and we know of none so proper or so convenient as that the depositions shall go to the jury, if they go at all, as they come from the hands of the magistrate.

There may have been a practice to mark depositions as was done in this case ; but if so, it has passed *sub silentio* and without objection ; and, perhaps, no particular evil has resulted from it. Yet now that the objection is specifically

Knight *v.* Coleman.

taken, and we are required to act upon the subject, we hesitate to say that any mark may be put upon a deposition as a medium of communication in any respect between counsel and the jury. Counsel may as properly write upon a deposition their whole comments upon that portion of the testimony at length, as to put upon it any part of their comments, in short hand or by marks.

*New trial granted.*