Belknap,
No. 5524.

CARL N. RAUTENBERG & *a.*

*v.*

ALBERT MUNNIS & *a.*

Argued January 4, 1967.
Decided February 24, 1967.

*Wescott & Millham* ( *Mr. Peter M. Millham* orally ), for the plaintiffs.

*Upton, Sanders & Upton* ( *Mr. J. Gilbert Upton* orally ), for the defendants.

GRIMES, J. Petition to remove a cloud from title and determine the boundary line between the property of the plaintiffs in Alton and that of the defendant Veronica G. Munnis which lies to the north. The Trial Judge ( *Grant, J.* ) found the line to be as contended by the defendants. We hold that the evidence supports his findings and that the trial was free from prejudicial error.

In 1901 Jones, trustee, who is the common predecessor in title, conveyed the northerly part known as Rum Point which is bounded northerly and easterly by Lake Winnipesaukee to one Flanders. Flanders conveyed to Loveren in 1940 who conveyed to defendant Veronica in March 1950.

The description in the deed from Jones to Flanders was as follows:

" Beginning at an iron hub set in the ledge near the highwater mark on the shore of Lake Winnipiscogee thence running southwesterly thirty-six and five tenths ( 36.5 ) feet to a large spotted Pine tree at the northerly side of a contemplated road; thence by said road southerly and southwesterly two hundred twenty four and three tenths ( 224.3 ) feet to an iron hub set in the ground; thence southeasterly about two hundred fifty ( 250 ) feet to an iron set in a large boulder near highwater mark at the shore of said Lake; thence by the shore of said Lake to the point begun at, containing about two and forty-one one hundredths ( 2.41 ) acres more or less. "

Plaintiffs' parcel which is bounded on the east by the lake was conveyed by Jones to Rollins in 1934 who conveyed it to the plaintiffs in September 1950.

The deed from Jones to Rollins begins at the southeasterly corner of the lot, runs westerly to the proposed road, thence northerly to the " southerly corner of land formerly owned by Dana J. Flanders, conveyed to him by Herbert J. Jones, trustee, by deed dated December 2, 1901 . . . thence turning to the right and running easterly along said Flanders land two hundred and and fifty ( 250 ) feet, more or less, to the shore line of said lake, which point was supposed to have been marked by an iron set in a large boulder near highwater mark. "

While no iron hub was found in the ledge at the northwesterly corner of the defendants' parcel it is not disputed that a drill hole located there is the correct bound. There is also no dispute about the location of the southwesterly corner of the defendants' land ( the westerly end of the common line ) which is marked by an iron pin. The dispute arises over the location of the easterly end of the common boundary.

When Rollins conveyed to the plaintiffs the description of the northerly boundary line of the southerly parcel was changed to read as follows: " thence turning to the right and running south about seventy-three degrees east in a straight line, along said Munnis land, to a pointed boulder at the shore, with an iron pipe driven on the shore side. " Plaintiffs contend that this correctly states the location of the boundary and establishes the disputed bound at a point marked D on Exhibit 3. Defendants contend that the easterly terminus of the disputed line is about 150 feet southerly along the shore from point D at point K on Exhibit 3 which is marked by a drill hole in a large boulder which is off shore. This leaves a triangular plot of 4/10 of an acre in dispute.

The evidence in disputed boundary cases is seldom all one way and it is for the Trial Judge to determine as questions of fact the location on the ground of boundaries described in the deeds. *Fagan* v. *Grady*, 101 N. H. 18, 21; *Goodwin* v. *Johnson*, 105 N. H. 294. The measurements of distances in the deed to Flanders are to the tenth of a foot and the quantity is stated as 2.41 acres more or less. From this it could be inferred that the land had been carefully surveyed even though the courses are stated generally. While boundaries if known control over estimates of

quantity (*Harmon* v. *Kennett Company*, 103 N. H. 219, 225; *Rollins* v. *Varney*, 22 N. H. 99, 101), yet when area is stated in such precise terms as here it may be given weight in determining which of two disputed bounds is the correct one. *Goodwin* v. *Johnson, supra*; 12 Am. Jur. 2d, Boundaries, *s.* 75; 11 C.J.S., Boundaries, *s.* 57. There was evidence that if the disputed bound were at D the defendants would have only two acres instead of 2.4 acres which they would have if it were at K. There was testimony that if the bound were at D the line would be described as running easterly instead of southeasterly as called for in the deed and that point K would make the line run S 44 degrees 22 minutes E, only a fraction of a degree from southeasterly. There is also evidence that the drill hole in the ledge at the northwest corner of the defendants' land and the one in the boulder at point K are the same diameter and there is opinion evidence that they were made by the same kind of drill which was not a plug drill, which is usually used, but was a type used to drill for blasting. There was evidence that when deeds called for iron hubs in boulders, it was not uncommon for surveyors to drill the holes and then neglect to come back to insert the iron hub. The evidence was sufficient to support the findings of the Trial Court that the drill hole at point K was the true bound.

Plaintiffs contend that the defendants are estopped to claim the bound at point K and also that point D has been established as the bound through acquiescence.

Estoppel would require words or conduct, intentional or culpably negligent, on the part of one who either knows or should know the truth, which has induced another who was justifiably ignorant of the true facts and had a right to rely on such words or conduct, to act in reliance on them and so change his position that he would be injured if a contrary assertion were allowed. *Monadnock School District* v. *Fitzwilliam*, 105 N. H. 487; *Richardson* v. *Chickering*, 41 N. H. 380.

Acquiescence may establish a boundary where the parties for twenty years or more have recognized a certain boundary as being the true one and have occupied their respective lots accordingly. The bound thus acquiesced in will prevail even over the description in the deeds. *Richardson* v. *Chickering, supra.*

The Trial Court was entitled to believe Mr. Munnis when he testified that when he first saw the property, one Clough, a nephew

of Rollins, pointed out the general area of point D as being the bound but that he never saw the iron pin; that he never knew exactly where the southerly boundary was but was content that everything was taken care of in the deed; that he never had any conversation with the plaintiffs regarding the common boundary or who owned the swamp area; that he never showed the pointed rock near point D to the plaintiffs, as claimed by them; and that he never had any conversation with them about dividing up the swamp area between points D and K. He said he did not say anything when Mr. Rautenberg mentioned plans to put sand in the swampy area because he did not know where the bound was and felt that each would own whatever the deeds called for. The Trial Court was also entitled to believe Mrs. Munnis, the record owner, who testified that she had no knowledge of the boundary line and that she never had any conversation with the plaintiffs regarding it.

It appears that both points D and K are in what was a relatively inaccessible location and there has been no actual occupancy of the disputed area by any of the parties or their predecessors in title apart from occasionally walking around it. The Trial Judge found that Loveren and Rollins, the immediate predecessors, had only vague ideas of the boundary and had not much interest in it although he did find that there was evidence that Rollins considered point D to be the boundary. Mr. Loveren, the defendant's grantor, who was called as a witness by the plaintiffs, testified that while he owned the property he went around it and located an iron pin in the vicinity of point D which he assumed was the southeast corner and that he had some talk with Rollins regarding the boundary. He denied, however, having any agreement with Rollins with respect to it and testified that neither one of them knew just where the line was and had no real interest in it because of the swampy nature of the area. The Trial Court was justified in not finding that the boundary was established by either estoppel or acquiescence.

We now consider the exceptions to the exclusion of evidence. Plaintiffs made an offer of proof that the witness Clough, who was a nephew of Rollins, would testify that three or four years before Munnis bought Rum Point, Rollins took him around the southerly tract which Rollins then owned and pointed out the bounds including the iron pin at point D. There had been considerable dispute as to the admissibility of this evidence and since it was

late in the day the Court decided that he and counsel should study the matter and reserved his ruling until the next day. Plaintiffs' counsel then requested that the offer of proof be accepted as the evidence in the event the Court ruled it would be admissible, rather than hold Clough over another day. The next day the Court correctly ruled the evidence admissible and accepted the offer of proof as evidence. See *Tuftonboro* v. *Willard*, 89 N. H. 253, 258. Having made the election to rely on the offer of proof the plaintiffs cannot now complain that the Court did not hear the evidence directly from Clough.

The Trial Court properly excluded other evidence of Clough, also contained in an offer of proof, to the effect that he pointed out the iron pipe at point D to Mr. Munnis when he was showing him the property. The evidence was offered on the issue of estoppel. Clough was not an owner or an agent of an owner, and at the time to which the evidence related the defendants had not purchased their lot and the plaintiffs had not even considered purchasing their parcel. Later in the trial Mr. Hoffman, father of Mrs. Rautenberg, who was with Clough and Mr. Munnis at the time referred to in the offer of proof, testified to the same facts contained in the offer of proof. His testimony was admitted on the issue of acquiescence. It was not prejudicial error for the Court to exclude the offer of Clough's testimony for the purpose of proving estoppel and it is not necessary to decide whether it was admissible on the issue of acquiescence since it was never offered for that purpose. See *Saucier* v. *Spinning Mills*, 72 N. H. 292, 295; *Gauthier* v. *Bergeron*, 107 N. H. 153, 154.

*Exceptions overruled.*

All concurred.