Rockingham,
No. 5929.

EDWARD SHERIS

*v.*

JOHN O. MORTON *& a.*

April 5, 1971.

*Leonard, Leonard & Prolman ( Mr. Richard W. Leonard* orally ), for the plaintiff.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for the defendants.

KENISON, C.J. Petition to quiet title in which plaintiff alleges title to three strips of land on Concord Point, Rye, New Hampshire, which are now in the possession of the defendants. Defendants filed a prayer for cross-relief that their titles be quieted as against the plaintiff. Trial before a Master ( *Lindsey R. Brigham,* Esq. ) resulted in a recommendation that plaintiff's action be dismissed and that defendants' titles be quieted as against plaintiff. The Court ( *Leahy,* C.J. ) approved the master's report over plaintiff's objections that the master's report was untimely, that it was inconsistent and against the evidence, and that it misapplied the law of adverse possession. Plaintiff also objected to the adequacy of the hearing in superior court on the master's report. All exceptions were reserved and transferred.

The land involved in this dispute is located on Concord Point, a small rocky promontory extending into the Atlantic Ocean in a northeasterly direction, bounded on the north by Parsons Creek on the west by Ocean Boulevard. The defendants are owners of the five westerly lots on the point. In 1962 plaintiff acquired a quitclaim deed to certain marsh land on the western side of Ocean Boulevard across from Concord Point. On a theory that defendants' deeds do not extend title all the way to the boundaries of Concord Point, plaintiff now claims title to three small strips of land on the point, one situated along the ocean to the south, a second situated along the edge of Parsons Creek, and a third situated between the edge of the west lot and Ocean Boulevard.

The trial of this case was concluded in September, 1967, and the briefs, requests and reply briefs were filed with the master by November 1, 1967. The master filed his report with the superior court on May 10, 1968, a period of slightly more than five months later, and the report was approved.

Plaintiff argues that the court is bound by superior court rule 67 to refuse to approve a master's report filed after conclusion of a term. The first two paragraphs of superior court rule 67 read as follows:

"Whenever an auditor, master or referee shall be appointed, the rule shall be issued, the cause tried and the report made, within such time as the court may direct therein. If no report

shall be made within the time so limited, the court may discharge the rule.

"If no time is limited by the court, in the rule, the auditor, master, or referee, having been duly sworn, shall give fourteen days' notice of the hearing to the attorneys of record in the matter, in sufficient season so that a report may be returned to the next term of court." RSA 491:App. R. 67. Both this rule and the statutes regulating references to auditors, masters and referees have never been interpreted in a technical manner. *Drown* v. *Hamilton*, 68 N.H. 23, 44 A. 79 ( 1894 ); RSA 519: 10, 13. From an early time in this State the trial court has been given considerable flexibility and latitude in determining whether noncompliance with court rules is a mere irregularity on the one hand or a prejudicial breach on the other hand. *Nassif Realty Corp.* v. *National Fire Ins. Co.*, 107 N.H. 267, 269-70, 220 A.2d 748, 750 ( 1966 ). *See also Garabedian* v. *William Co.*, 106 N.H. 156, 158, 207 A.2d 425, 426 ( 1965 ).

Even where the trial judge specifies a time for the return of the master's report the language of the rule permits the judge to accept a late return. We think that the rule gives the judge the same discretion where the report is filed the following term of court. The present case was not a simple one. It involved four days of trial, 428 pages of testimony, and 152 exhibits, which included deeds, maps, surveys, abstracts, plans, probate records, and photographs. Under such circumstances we think it well within the discretion of the trial judge to approve a master's report filed after the end of a term of court. *See Stiles* v. *Dube*, 106 N.H. 339, 211 A.2d 402 ( 1965 ).

Plaintiff's second exception is that he was denied an adequate hearing before the trial judge on the merits of the master's report. On May 14, 1968, the court informed counsel for plaintiff that it had received the master's report and that it would approve the report unless written objections were filed prior to June 3. The plaintiff requested a hearing, and one was scheduled for June 18. Since no written objections had been prepared for the hearing, the hearing was oral and without a transcript. The court gave the plaintiff until July 1 to file his written objections to the report. The objections were filed, and the report was approved on July 3, 1968. Plaintiff received notice of the hearing on the merits of the master's report and was given an opportunity to present his objections to the trial judge both

orally and in writing prior to the judge's decision to approve or reject the master's report. On this record we cannot conclude that the plaintiff was denied an adequate hearing before the superior court.

Plaintiff's third exception, that the master's report is inconsistent and against the weight of the evidence, requires a review of the evidence and the master's conclusions. On each of the four lots with southern exposure there is a cottage facing south. A fifth lot faces a portion of Parsons Creek. A stone wall runs along the foundations of the southern cottages, a second runs along the edge of Parsons Creek to the north, and a third bounds the western edge of the west lot. In former times a public road, known as the "beach road," ran between the southern foundation wall and the ocean. Plaintiff, who does not own one of the lots on Concord Point, claims title to all of the land between the foundation wall of the southern cottages and the ocean, between the wall on Parsons Creek and the center of the creek, and between the west wall and Ocean Boulevard.

The master recommended judgment for the defendants, and recommended that their respective titles to the four westerly lots be quieted as against the plaintiff. In such cases, particularly where the master has had the benefit of a view, we can only reverse for errors of law or if the findings of fact are not supported by the evidence. *Rautenberg* v. *Munnis,* 108 N.H. 20, 22, 226 A.2d 770, 772 (1967). Upon an examination of the record, briefs, and exhibits in this case, we have concluded that the master's findings are internally consistent and supported by the evidence.

All titles to this area stem from the ownership of Joseph and James Parsons. In 1865 a tract known as "Sea Field" on Concord Point was conveyed to William Berry. By successive conveyances it was acquired by Henry and Crosby Knox, who in turn subdivided the land. The defendants' titles on Concord Point all stem from this subdivision. The deed to Berry describes "Sea Field" as bounded "easterly by the beach, southerly and westerly by land belonging to the said Joseph and James Parsons and northerly by the said Joseph and James Parsons land." Defendants contend that this deed conveyed all the land on Concord Point. Plaintiff ultimately acquired the Parsons' remaining land, in particular a portion called "Sea Beach," and claims that this land includes three tracts, situated

on the southern, northern, and western boundaries of Concord Point.

Plaintiff's strongest claim is to the southern portion of the point, and rests on the early deed in his chain of title to land then called " Sea Beach. " The deed describes " Sea Beach " as bounded " on the north by land and buildings of the Concord Company, easterly by the ocean, southerly by " Biddy Beach " and westerly by marsh land of Trefethen. " Since there is evidence that " Concord Company " refers to the defendants' predecessors in title, plaintiff argues that the description in his deed locates his land between the foundation wall of the southern cottages and the ocean on Concord Point. He notes that the defendants' deeds, by their own terms, extend not to the ocean but to the foundation wall or to " beach road " between the wall and the ocean. Plaintiff also relies on language which appears for the first time in the deed conveying certain marsh land to him, " [t]ogether with such portion of the sandy land and beach to the south of said channel between said Ocean Boulevard and the shore of the Atlantic Ocean, the latter believed to include a triangular piece of land running from said Ocean Boulevard easterly to the shore of the Atlantic Ocean, the southerly boundary of which the Grantor is unable to define . . . . "

Although plaintiff's theory has some plausibility, there are a number of other considerations that led the master to conclude that plaintiff's land was located farther south, along the coast, and that the defendants had superior title to the four westerly lots on Concord Point. First, plaintiff's theory requires him to assume that the southern portion of Concord Point was called " Biddy Beach. " However, both oral testimony and an old plan in Parsons, *History of the Town of Rye* place " Biddy Beach " 100 yards or more to the south. In addition, there is nothing at Concord Point which resembles " sandy land or beach, " the coast being extremely rocky. Secondly, old photographs show that prior to construction of a stone retaining wall along the ocean and the addition of fill, the disputed portion of land was considerably smaller, and for the most part only wide enough to accommodate the old beach road between the cottages and the sea. This conclusion is supported by the references to this road in deeds of title as the " old beach road, " the " road on the beach, " the " road by the sea, " and the " sea beach passway. " If the disputed land was only wide enough to

accommodate the public road, it is understandable that the defendants' deeds ran only to the edge of the road and not to the ocean, and it is improbable that Parsons, the original owner, would have attempted to retain a fee in such a narrow strip of land. *Woodman* v. *Spencer,* 54 N.H. 507, 510-11 ( 1874 ); *Luneau* v. *MacDonald,* 103 N.H. 273, 276, 173 A.2d 44, 46-47 ( 1961 ). Thirdly, the language in plaintiff's deed referring to " Biddy Beach, " the Trefethen Marsh, and the land of the " Concord Company " to the north can reasonably be interpreted to place plaintiff's land along the coast, to the south of Concord Point. Under this interpretation the land would have been to the south of a portion of the west lot on Concord Point. Today, this land is entirely within the right of way of Ocean Boulevard. Fourthly, plaintiff did not introduce any independent evidence that supported his claim to land on Concord Point except the ambiguities in the defendants' deeds and the vague language which appears for the first time in the quitclaim deed plaintiff acquired in 1962. For 100 years, since the original owner conveyed his last lot on Concord Point, no predecessor in interest of the plaintiff has ever claimed title to any land on the point. Taking all these considerations into account we believe that the master's interpretations of the deeds are supported by the evidence and are internally consistent.

The master found that the right of way of the old beach road occupied the entire space between the foundation wall of the defendants' cottages and the sea, and that when the town of Rye officially discontinued this public road in 1956, title to land extending to the ocean reverted to the abutting owners, the defendants. In *Luneau* v. *MacDonald, supra* at 276, 173 A.2d at 46 ( 1961 ), we held that "[u]nder the firmly established law of this jurisdiction a conveyance of land bounded by a stream or a highway is presumed to run to the thread of the stream or the center of the highway, unless a contrary intention is plainly disclosed. 'An intent that the soil in the river and street shall be owned by a person who does not own the abutting land is so improbable that it would require and express exception in the grant, or some clear and unequivocal declaration, or certain and immemorial usage, to limit the title of the grantee to the edge of the street and the edge of the river. ' " Where the public road is abutted on only one side by private property and on the other by public waters, it is the logical corollary of this rule that absent clearly expressed intent to the contrary,

the abutter is presumed to take the entire land of the public road. *Johnson* v. *Grenell,* 188 N.Y. 407, 410, 81 N.E. 161, 162 ( 1907 ); 3 American Law of Property *s.* 12.112, at 429 ( 1952 ); 6 Thompson, Real Property 588 & n.31, 669-70 ( 1962 repl. ed. ). The citations support the proposition that if a deed by its terms conveys to the side of a road, the effect nevertheless is to convey the entire road if the grantor owns the land under the road and does not own the land on the other side. On this reasoning, the master concluded correctly that the plaintiff did not have title to any land between the southern foundation wall and the ocean.

With respect to the two additional disputed strips of land, one along Parsons Creek and the other to the west of the point, the plaintiff introduced no evidence of ownership other than the vague references in deeds to land abutting on the north and west. We agree with the master's ruling that this evidence was insufficient as a matter of law.

We have concluded that defendants have superior title to the lots on Concord Point. Therefore it is unnecessary to consider the claim advanced by the defendants of their right to the disputed territory under a claim of adverse possession, and the contention of the plaintiff that RSA 249:30, prohibiting a person's acquiring rights by adverse possession to a public highway, is applicable.

*Exceptions overruled.*

All concurred.