Merrimack
No. 7039

ARTHUR O. FREW, JR. AND ELIZABETH H. FREW

v.

EUNICE M. DASCH

May 30, 1975

*Branch & Tobin (Mr. Thomas J. Tobin* orally) for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden and Donald E. Gartrell (Mr. Gartrell* orally) for the defendant.

DUNCAN, J.  By this bill in equity the plaintiffs seek to quiet their title to jointly owned residential property on Queen Street in Boscawen. They also seek to establish the boundary line between their property and the defendant's. By her requests for findings and rulings, the defendant also sought the court's determination of the disputed common boundary. Hearing was by a Master *( Leonard C. Hardwick,* Esq.) who found that, on the evidence produced by the parties, any finding as to ownership or location of the boundary would be "highly conjectural". The master therefore recommended that plaintiffs' bill be dismissed and that defendant's request for the finding of a boundary line be denied. The master's report was accepted and approved by the Court *( Batchelder,* J.) and its recommendations adopted as orders. Both plaintiffs and defendant excepted to the orders on the ground that they were contrary to and unsupported by the evidence. Reserved and transferred by *Batchelder,* J.

The disputed boundary line divides the Frew property on the south from the defendant's adjacent land on the north. Together the two properties comprised plots numbered 148 and 149 on the Boscawen town plan, both of which were at one time owned by a Guy Hubbard. In 1948, Hubbard conveyed the southern portion of Lot 148 to the plaintiffs' predecessor in title while retaining the northern portion of that lot, and all of Lot 149 which has frontage on Main Street as well as Queen Street. Through a series of conveyances, the defendant came presently to own the land retained by Hubbard after the 1948 conveyance.

The tract conveyed by Hubbard now owned by plaintiffs was described as follows: "Beginning at a stone marker, herein called Marker #1, at the Southwest corner of the tract hereby conveyed; thence Easterly along ... Queen Street to a stone marker, herein called Marker #2; thence directly North by other land of said Grantor to another stone marker, herein called Marker #3; thence

due West along the line indicated by another stone marker, herein called Marker #4 to land of Edward Girard; thence southerly along said Girard land to the point of beginning at Marker #1." The southern, eastern, and western boundaries of the conveyed tract follow established lines, indicated by compass point and Markers #1 and #2. These are not in dispute, although the eastern boundary so described intersects the Dasch barn if the northern boundary is where the plaintiffs claim it to be. The parties do not dispute the fact that the Frews' northern boundary must run due west, on a line parallelling the plotted northern boundary of Lot 148. However, there is substantial disagreement as to the location of Markers #3 and #4.

The plaintiffs maintain that the site of the northeast marker (#3) was at a distance of twelve to fifteen feet west of the northwest corner of the Dasch barn, and that the boundary then runs due west to a "clump" of trees on the Girard line. The Frews conceded that Marker #3 would have had to be at least that distance from the barn, and acknowledged that Hubbard used such a drive space around the barn in order to plow and farm the retained northern portion of Lot 148, since a granite retaining wall precluded access from the Main Street frontage. If the established eastern boundary of the conveyed tract intersected the barn, Hubbard would have had no means of vehicular access over his own land to the rear parcel.

The defendant contends that the plaintiffs' northern boundary runs due west from a cedar tree, along a row of hedges that lies south of the barn. Defendant's husband testified that he had located a stone near, though not on, the Frews' western boundary which was on direct westerly line with the cedar and hedge lying along the easterly end of the boundary claimed by the defendant. This stone was thought to be the location of Marker #4, since that marker only "indicated" a westerly line and may not have rested in the exact northwest corner. However, the alleged marker was removed by plaintiff Arthur Frew prior to the hearing.

In sum, plaintiffs contend their northern boundary runs due west, at an average distance of 140 feet from their established southern boundary. The defendant claims that it extends along the due west line indicated by the shrubbery, at an average distance of 90 feet from the southern boundary. Thus the dispute concerns the ownership of a strip of land some fifty feet wide.

In refusing to fix the boundary at either argued location, the master relied upon *Adams v. Mellian*, 99 N.H. 140, 106 A.2d 389 (1954). It was there held that the superior court has no authority to

establish a disputed boundary when neither party has sustained his burden of proof. *Id.* at 142, 106 A.2d at 390; *see* C. Brown and W. Eldridge, Evidence and Procedures for Boundary Location § 2-10, at 17 (1962). In *Adams,* however, the defendant was in actual possession of the disputed land. Since the plaintiff failed to establish his claim by adequate proof, the effect of the decision was to leave the defendant in possession. Thus a resolution of the controversy was achieved which the defendant did not challenge. *See* 551 N.H. Briefs and Cases 196 *(Adams v. Mellian,* No. 4292). Similarly, in *Judge v. Field,* 112 N.H. 337, 295 A.2d 459 (1972), plaintiffs' failure to prove ownership of a disputed strip of land resulted in a clear advantage to defendants, who continued in occupation. In the instant case, however, since both parties claim under the same description and neither had physically occupied the disputed area, the only status quo maintained by dismissal is one of uncertainty. Unlike the defendants in *Adams v. Mellian supra* and *Judge v. Field supra,* the defendant in this controversy does not acquiesce in the result, but joins with the plaintiffs in seeking a final determination. In such circumstances, if the probabilities tip in one party's favor, so as to remove a resolution from the realm of conjecture, a final determination should be made.

Although there were substantial conflicts and several remarkable gaps in the evidence presented to the master, certain implications are clear. The location of the southeast corner of the Frew property, "Marker #2" in the original deed, is not in dispute. The eastern boundary, also not contested, must then run from that corner "directly north" along the line dividing Lot 148 from Lot 149 to the missing "Marker #3". However, as noted previously, this line would strike the Hubbard (Dasch) barn. If the missing Marker #3 lay on that northerly line, as required in the deed, it would have to lie either north or south of that barn, which was constructed prior to the original conveyance in 1948. If north, the grantor would have retained no means of vehicular access over his own land to the rear of Lot 148; if south, there would be ready access to the retained land.

The record discloses that the grantor, Hubbard, actively worked that rear parcel using a plow driven around the barn. The plaintiffs contend that Hubbard merely retained a twelve to fifteen feet wide driveway around the barn, and thus positioned Marker #3 at that distance from the northern corner of the barn. Such a point, however, is inconsistent with the language in the deed since it would not lie on a line "directly north" of the agreed location of Marker #2 but rather on a northwesterly line therefrom.

In order to construe or give consistent effect to the language of the deed, the finder of the facts must place himself as nearly as possible in the position of the parties at the time of the conveyance and gather their intention in light of the surrounding circumstances. *Sanborn v. Keroack,* 103 N.H. 297, 300, 171 A.2d 25, 27 (1961); *North Hampton District v. Society,* 97 N.H. 219, 220, 84 A.2d 833, 834 (1951). On the evidence presented, a location of Marker #3 on a northerly line to the south of the barn would most clearly reflect the probable intention of the grantor. So located twenty feet south of the barn, at the corner formed by the hedges, the retained rear portion of Lot 148 could be readily used by its owner. Moreover, the course of the hedges at the northeast corner, running due north along the established eastern boundary and then turning due west, strongly confirmed the verbal descriptions in the deed. We therefore hold that while the plaintiffs failed to carry their burden, the defendant could reasonably be found to have satisfied her burden by establishing a balance of probabilities. 12 Am. Jur. 2d *Boundaries* § 99 (1964); 11 C.J.S. *Boundaries* § 116 (1938). *See generally* C. McCormick, Evidence § 339 (a) (2d ed. 1972).

*Plaintiffs' exception overruled; defendant's exception sustained.*

All concurred.