Rockingham
No. 7166

JOHN J. STARVISH & *a.* v. RALPH M. FARLEY & *a.*

October 31, 1975

*Griffin, Harrington, Brigham & Ritzo (Mr. James E. Ritzo* orally) for the plaintiffs.

*Casassa, Mulherrin & Ryan (Mr. John J. Ryan* orally) for the defendants.

KENISON, C.J. The issue in this case is the location of a boundary line between the land of the parties in Hampton Falls. After a trial the Master *(Leonard C. Hardwick,* Esq.) found that the property in question belonged to the defendants. The Superior Court, *Morris, J.,* approved the master's recommendation and reserved and transferred the plaintiffs' exceptions.

The area in question lies north of Crank Road, which runs generally east-west. The boundary determined by the trial court is a line five hundred thirteen feet in length which runs northwest from Crank Road. The plaintiffs' property is north and east of this line; the defendants' is south and west. There is no dispute that the northwestern segment of this line, some two hundred ninety-six feet in length, is the boundary between the property of the parties. This segment will be referred to as the undisputed boundary. The defendants contend, and the trial court found, that the boundary continues from and in the direction of the undisputed boundary to Crank Road. This extension of the undisputed boundary, which is approximately two hundred seventeen feet in length, will be referred to as the defendants' line. The plaintiffs claim that the boundary runs southerly from the southeastern end of the undisputed boundary (also the northwestern end of the defendants' line) to Crank Road. This will be referred to as the plaintiffs' line. The plaintiffs' line intersects Crank Road approximately two hundred feet west of the defendants' line. The disputed parcel is a triangle, bounded by Crank Road which runs east-west, the plaintiffs' line which runs north-south, and the defendants' line which runs northwest-southeast. There is a small creek which runs generally north-south and which passes under Crank Road about halfway between the end of plaintiffs' line and the end of defendants' line. The plaintiffs have a frontage approximately ten feet in length on Crank Road east of its intersection with defendants' line.

The plaintiffs' house is on the northern part of their property and is reached from Drinkwater Road. That part of their property is separated from the area adjoining the disputed parcel by a swamp. As a practical matter the only access to the southern portion of their

property is from Crank Road. The plaintiffs did not visit the Crank Road end of their property between 1957-1958 and 1971.

Two deeds were introduced in evidence. The relevant portion of the plaintiffs' deed states that their property is bounded "Westerly by land now or formerly of James H. Brown, Southerly by land now or formerly of the heirs of Stephen Brown, land now or formerly of Archibald Lantz, and the Crank Road...." Archibald Lantz is the defendants' predecessor in interest. Nothing in the evidence locates the land of either James H. Brown or Stephen Brown. As noted above, the boundary fixed below accords the plaintiffs a ten-foot frontage on Crank Road. The relevant portion of the defendants' deed states that their property is bounded "northerly, by land of Marion C. Brown; easterly, by land of said Marion C. Brown and land of heirs of Henry Young; southerly, by Crank Road in part and in part by land of said heirs of Henry Young; and westerly, by land of Stephen Brown in part, and in part by land of Clarence E. Michaels...." Marion C. Brown was the plaintiffs' predecessor in interest. Nothing in the evidence locates the land of Stephen Brown. Henry Young was a predecessor in interest of the defendants; there is no evidence on whether he conveyed all his property to them. The master found: "The lots as described in the deeds are adjacent but neither deed is especially helpful in locating the boundary between the two tracts. No metes or boundary monuments are referred to in either deed." *Kennett Corp. v. Pondwood, Inc.,* 108 N.H. 30, 33, 226 A.2d 783, 786 (1967), holds: "Where land is described by reference to an abutting land and the abutting lines can be accurately determined, the line of the adjacent tract becomes a monument." This principle has no application here. The only argument based on the deeds is plaintiffs' contention that their property is bounded by Crank Road. But the disputed issue is not whether their boundary is Crank Road but the length of their frontage. The master correctly concluded that the deeds offer no guidance on this point.

Plaintiffs' first witness was the daughter of the plaintiffs' grantor. She resided on the property from her birth in 1901 until the conveyance in 1952. She testified that the boundary was marked by a fence adjoining a north-south roadway, which she placed adjacent to the brook and also at the plaintiffs' line. These two locations are one hundred feet apart at Crank Road. She did not remember a fence on defendants' line. Plaintiffs' second witness had hunted in the area during the period 1935-1955. He placed the roadway and fence

within fifteen feet of the brook. Mr. Starvish and his two sons testified. He stated that the roadway was just east of the plaintiffs' line and that his sons had strung a fence there along the line of the remains of a previous fence sometime about 1957. He testified that he talked on that occasion to Mr. Farley who acknowledged that the new fence marked the boundary. Plaintiffs' sons confirmed Mr. Starvish's testimony.

The defendants' first witness was a registered land surveyor who had directed a perimeter boundary survey of their property made shortly after the litigation began. He placed the boundary on defendants' line, basing his judgment on the remains of a stone wall and a wire fence that he found along that line. These monuments were observed by the master, counsel for the parties, and the parties during a view taken prior to the hearing. The surveyor gave his opinion that the wall and the wire fence had been established at least forty years ago. Mr. Farley testified that there was never a fence along plaintiffs' line. He did not recall having the conversation testified to by Mr. Starvish and his sons. He stated that there had been a roadway just *west* of plaintiffs' line. He admitted that sometime in the late 1950s he had regraded and blacktopped the area through which plaintiffs' line runs.

The master found that at the time plaintiffs purchased their property that there was a roadway along plaintiffs' line which had been used by plaintiffs' predecessors and by plaintiffs to enter on the southerly end of plaintiffs' property. The evidence placed this roadway in three different locations. It is not clear whether any traces of the roadway remain. The contention that it marked the boundary rests on the testimony of plaintiffs' witnesses. There was evidence that the defendants' predecessor had not used the property so that he had no reason to object to occassional crossings by plaintiffs' predecessors. This circumstance weakens the inference from the existence of the roadway to the location of the boundary. The master refused to find that there had been a fence marking the boundary alongside the roadway.

The master found that "there were certain monuments on the ground that do indicate an old established boundary between land presently owned by plaintiffs and land presently owned by defendants. This line and the monuments are on . . . a surveyor's plan of the property of the defendants." The master properly regarded the remains of the wire fence and the stone wall as evidence of the location of the boundary line. *Knight v. Coleman,* 19 N.H. 118 (1848). Similar inferences were drawn in *Frew v. Dasch,* 115 N.H. 274,

277-78, 339 A.2d 18, 20 (1975), where the court relied on the course of certain hedges to establish a boundary line. The trial court approved the master's finding and entered its decree accordingly. The plaintiffs contend that the monuments referred to are parts of an old fence intended to restrain cows rather than to mark the boundary. This assertion is based on the testimony of plaintiffs' first two witnesses, which is confused on the point. Their evidence tends more to refute than to support plaintiffs' contention.

The evidence in disputed boundary cases is seldom all one way. *Rautenberg v. Munnis,* 108 N.H. 20, 22, 226 A.2d 770, 772 (1967). There were substantial conflicts and several remarkable gaps in the evidence presented to the master. *Frew v. Dasch,* 115 N.H. 274, 277, 339 A.2d 18, 20 (1975). The sharp conflicts between the witnesses were for the court to resolve. Even on matters where it might be urged that there was no conflict, the court was not compelled to accept the plaintiffs' evidence. *Goodwin v. Johnson,* 105 N.H. 294, 296, 199 A.2d 97, 99 (1964). "The location of the boundary line was a question of fact for the master, and his findings were warranted by substantial evidence." *McLoon v Collins,* 114 N.H. 189, 193, 317 A.2d 559, 562 (1974).

*Plaintiffs' exceptions overruled.*

All concurred.