Strafford
No. 7398

THOMAS K. DAVENHALL

v.

ALBERT J. CAMERON

ROBERT SCHULTE AND BARBARA SCHULTE

v.

THOMAS DAVENHALL

November 30, 1976

*Calderwood, Ouellette & Hallisey (Mr. Raymond R. Ouellette* orally)
for the plaintiff.

*Beamis, Davis, Murray & Grossman (Mr. Jerome H. Grossman*
orally) for the defendant.

KENISON, C.J.    Robert and Barbara Schulte brought an action
against Thomas Davenhall to quiet title and for an injunction.
They derived their title from Albert J. Cameron, who is also the
defendant in a quiet title action brought by Davenhall. The cases
were consolidated for trial before Master *Earl J. Dearborn,* Esquire.
The disputes involve the legal status of a road known as the "Old
Road to Trotting Park" in Farmington, New Hampshire. Daven-
hall claims that the road, which is within the confines of his prop-

erty, is a private way and that no one has prescriptive rights to use it. Cameron and the Schultes claim that the road is public. After a lengthy trial, the master concluded that the road is a public way and has been since 1831 when it was duly laid out, that the public has not lost its rights by nonuse or abandonment of the road and that none of the parties have any interest in the road other than as members of the public. *Mullavey*, J., approved the master's report. The issues on appeal have been narrowed considerably. The plaintiff Davenhall apparently concedes that the road was properly laid out in 1831, that nonuse or abandonment by the public for twenty years does not constitute discontinuance of a highway, *Thompson v. Major*, 58 N.H. 242 (1878), and that one cannot acquire a private interest in a highway by adverse possession. RSA 249:30; *see Windham v. Jubinville*, 92 N.H. 102, 25 A.2d 415 (1942).

The plaintiff argues that, because the master did not explicitly state that the case involved the question whether the road had been discontinued, his whole approach to the case was erroneous. At the beginning of his report the master framed the issue as whether the road was a public or private way. This formulation is correct and subsumes the issue of discontinuance. The transcript makes clear that the parties and the master regarded resolution of the discontinuance question necessary to the ultimate disposition of the case. Similarly, an examination of the master's report reveals that the question of discontinuance was at the forefront of the litigation. At several places in the report the master discusses the evidence with respect to discontinuance. After reviewing the descriptions in all the deeds in question, the oral testimony and the official reports, the master concluded that "the preponderance of the evidence indicates that the road . . . was and is in existence as a public way . . . ." We find no error in the master's approach. Although he did not specifically deny the plaintiff's request for a finding that the road was discontinued as of 1867, it is clear that he concluded that the road had not been discontinued.

Davenhall contends that, regardless of the approach, the master placed an unreasonably high burden of proving discontinuance upon him in that the master refused to give proper weight to what Davenhall claims to be circumstantial evidence of discontinuance.

Once a highway is established, it is presumed to exist until discontinued (2 B. Elliott & W. Elliott, The Law of Roads and Streets § 1172 (4th ed. 1926); 3 P. Nichols, Eminent Domain § 9.33[2] (3d

ed. 1976)), and discontinuance is not favored in the law. Annot., 175 A.L.R. 760 (1948). Discontinuance is a fact that must be proved and the burden is upon the party who asserts discontinuance to prove it by clear and satisfactory evidence. 2 B. Elliott & W. Elliott, *supra* § 1173; *see Central Pac. Ry. v. Alameda County*, 284 U.S. 463, 468 (1932). Because public roads are discontinued by town vote, *Thompson v. Major*, 58 N.H. 242 (1878); *Hopkinton v. Smith*, 15 N.H. 152 (1844); RSA 238:1; Laws 1829, 52:6, and such actions are recorded in the town report, *e.g.*, Farmington Town Report 13 (1960), the best evidence of discontinuance is the official record. 2 B. Elliott & W. Elliott, *supra* § 1179, at 1678. However, as Davenhall correctly points out, because many Farmington town records were destroyed by fires in 1875, 1904, and 1928, it was impossible for him to introduce such direct evidence. He believes that under such circumstances the master should have considered, but did not, his circumstantial evidence which consisted of certain deed recitals, testimony regarding the use of the road and the 1917 Farmington Town Report that refers to a road, which the plaintiff alleges to be the Old Road to Trotting Park, as a private way.

The plaintiff relies upon *Webster v. Boscawen*, 67 N.H. 111 (1891), which he reads as holding that recitals in ancient records and deeds as well as evidence of public use of a road are competent to prove the proper laying out of a public highway. He contends that similar evidence is equally competent to prove the discontinuance of a public road. *Webster* is not as broad as the plaintiff reads it because no deeds were involved; the only document in issue was a town record of a vote to lay out the highway. Nevertheless, other cases support the plaintiff's position. For example, in a dispute over a highway boundary we held that recitals in deeds and other private documents may be used "to prove the reputation of matters of general and public interest recited therein." *Tuftonboro v. Willard*, 89 N.H. 253, 259, 197 A. 404, 408 (1938). Furthermore, in actions to quiet title, recitals in deeds and town records often constitute the basis upon which the master makes his decision. *E.g.*, *Sheris v. Morton*, 111 N.H. 66, 276 A.2d 813 (1971). We hold that, at least in cases in which essential town records are destroyed, a party may use circumstantial evidence to prove that a public highway has been officially discontinued.

We cannot agree, however, that the master failed to give the proper weight to the plaintiff's evidence. It is clear from the context of the report that, when the master stated that "no evidence

either from records or oral testimony has been presented . . . which would indicate that this road has ever been discontinued by the Town," he meant only that no evidence of an actual town vote was presented. The evidence in this case is not all one way. *Starvish v. Farley,* 115 N.H. 598, 602, 347 A.2d 175, 177 (1975); *Rautenberg v. Munnis,* 108 N.H. 20, 22, 226 A.2d 770, 772 (1967). At the outset we note that, following construction of a bypass and homes in the area in 1960, the highway department and home-owners were so uncertain of the status of the Old Road to Trotting Park that the townspeople petitioned to discontinue a part of the road not in issue in this case. Some of the deeds upon which the plaintiff relies simply refer to the road as "old." Other, more probative deeds call it the "discontinued road" or the "old discontinued road" but the master could have reasonably found that the parties did not use the word in its legal sense. There was some question whether the private way mentioned in the 1917 town report was in fact the Old Road to Trotting Park. Perhaps the most probative evidence that the road was not discontinued was the testimony of Attorney Grossman who stated that records at the New Hampshire State Archives, the State Library and the Historical Society completely filled the gaps in the Farmington Town records left by the various fires and that an exhaustive search of these records revealed no vote to discontinue the road. We cannot say that the master made any errors of law or that his findings of fact are not supported by the evidence. *Sheris v. Morton,* 111 N.H. 66, 69, 276 A.2d 813, 815 (1971).

*Plaintiff's exceptions overruled.*

GRIMES and BOIS, JJ., did not sit; the others concurred.