Mary NEELEY, Plaintiff and Appellant,

v.

Clarence O. KELSCH and Rhoda Mae
Kelsch, husband and wife, et al.,
Defendants and Respondents.

No. 16066.

Supreme Court of Utah.

Aug. 21, 1979.

Tex R. Olsen of Olsen & Chamberlain, Richfield, for plaintiff and appellant.

Paul R. Frischknecht, Manti, for defendants and respondents.

MAUGHAN, Justice:

The plaintiff, hereafter Neeley, brought this action to quiet title to certain real property in Sanpete County, Utah. Defendants, Clarence O. Kelsch and Rhoda Mae Kelsch, hereafter Kelsch, counterclaimed seeking to quiet title to a portion of real property Neeley claims. Defendants Conovers and Ottosens appeared at the time of the trial, but asserted no evidence or claims adverse to Neeley. They claimed no interest in the disputed land and did not join in this appeal.

The district court entered judgment in favor of Kelsch, which quieted title in them. We reverse, and remand for rendition of judgment for Neeley. Costs awarded to Neeley. All statutory references are to Utah Code Ann., 1953.

The common grantor of the parties, Arta Corbet, owned a parcel of land with a county road bisecting the land into a north and a south portion. By warranty deed dated June 7, 1957, Kelsch received title to land from Arta Corbet, described as:

Beginning at the northeast corner of the southwest quarter of the southeast quarter of Section 34, Township 18 South, Range 2 East of the Salt Lake Meridian, thence west 4.50 chains, thence south 17° 30′ west 8.15 chains, thence west 5 chains, thence south 11° 30′ west 4 chains, thence north 78° 30′ west 12 chains, thence north 15.17 chains, thence south 75° east 5.90 chains to the quarter Section line running north and south in Section 34, thence south 3.60 chains, thence east 4.455 chains, thence south 39° west 3 chains, thence south 19° 30′ west 1.73 chains, thence south 34° east 3.74 chains to Old County Road to Canyon, thence north 56° east 0.75 of a chain, thence north 34° west 3.74 chains, thence north 19° 30′ east 1.73 chains, thence north 39° east 3 chains, thence north 19° east 4.80 chains, thence south 80° east 14.42 chains, thence south 2 chains to the place of beginning, containing 22.40 acres. The parcel consists of all land lying north of the County Road which, in actuality, is approximately 15 acres instead of 22 acres.

The above metes and bounds description, however, left two parcels unconveyed by Corbet north of the county road: the property disputed in this action, and a parcel to the northwest, later conveyed to a neighbor, Perry Eliason, in 1962. Kelsch's metes and bounds description does not include the disputed property.

On August 21, 1965, in a "Uniform Real Estate Contract," Neeley contracted to buy from Corbet:

All of the lands lying south of the County Road . . ., in the name of Arta Corbet, . . . which were inspected and agreed to by the Buyers and the Seller on August 21, 1965.

On November 23, 1966, the Kelsch deed was recorded.

By warranty deed dated May 30, 1968, and recorded June 28, 1968, Neeley received title to land from Arta Corbet. With a one chain discrepancy, the metes and bounds description follows Kelsch's description then goes west away from Kelsch's land, crossing

the road, which at that point runs north-south only to turn back west where the land which Corbet sold to Eliason is located. Neeley's description then runs southeast then northeast to include the disputed property, and all of Corbet's land south of the County Road. At trial, Mr. Hutchinson, a surveyor, testified the disputed land was comprised of 8.47 acres.

The trial court admitted into evidence, over the objection of counsel for Neeley, the "Uniform Real Estate Contract" between Neeley and Corbet with its language of lands south of the road "which were inspected." Again over an objection, the trial court allowed inquiry into prior negotiations between Neeley and Corbet, Neeley testifying she did not inspect property north of the road, but had not inspected all of the land south of the road either. The trial court, over an objection, heard Kelsch testify he thought he was receiving land including the disputed parcel. Over another objection, the court also admitted into evidence a deposition of Corbet in which she claimed she intended to convey the disputed land to Kelsch, and not to Neeley.

■ The first issue is whether the trial court erred in holding mutual mistake as a basis for reforming the deeds. The general rule is that parol evidence may not contradict, vary, or add to deeds.[1] This Court, however, has recognized mutual mistake as an exception,[2] even if the property description is definite and certain.[3] This Court has said that one type of mistake justifying reformation is where the deed fails "to conform to what both parties intended."[4] Nevertheless, when a deed executes a contract of sale of land, all provisions of the prior contract are usually merged into the deed; and when a party denies merger due to mistake, he has the burden to show mistake by *clear and convincing evidence.*[5]

■ Kelsch has not presented clear and convincing evidence of mutual mistake, even though Corbet and Kelsch testified Kelsch was to receive the land; and even though Mrs. Neeley testified she did not know she was to receive the disputed land north of the road. Also, Neeley's land contract does speak of land south of the road. Mistake is not, however, clear.

The land contract does not prove mistake because of the merger doctrine; anything could have happened before Corbet signed the warranty deed. Kelsch's deed describes fifteen acres. It was the testimony of the surveyor the metes and bounds description does plot out a fifteen acre parcel. In addition, the concluding sentence of the description counsels (in consonance with the metes and bounds) the parcel in actuality is approximately fifteen acres instead of twenty-two acres. If Kelsch had the disputed land, they would have over twenty-three acres. Since evidence of Corbet's intention to convey to Kelsch is not clear, the trial court erred in ruling mutual mistake.

■ In addition, a party seeking reformation of a deed due to mutual mistake must plead such mistake with particularity. Rule 9(b) of the U.R.C.P. requires "[i]n all averments of . . . mistake, the circumstances constituting . . . mistake shall be stated with particularity."

■ In the counterclaim, Kelsch did not set forth with particularity any attack upon the deeds based on mutual mistake. They only generally asserted their ownership. In his opening statement, counsel for Kelsch did mention mistake, but did not ask for an amendment of the pleadings to properly put mistake before the trial court. Therefore, the trial court improperly heard parol evidence intended to modify the deeds and thus should have only examined the face of the deeds in resolving the dispute.

1. *Van Cott v. Jacklin*, 63 Utah 412, 226 P. 460 (1924).

2. *Jensen v. Manila Corp. of the Church of Jesus*, Utah, 565 P.2d 63, 64 (1977); *Janke v. Beckstead*, 8 Utah 2d 247, 332 P.2d 933, 934 (1958); *Sine v. Harper*, 118 Utah 415, 428, 429, 222 P.2d 571, 578 (1950).

3. *Jensen,* supra.

4. Id. at 65.

5. *Rasmussen v. Olsen*, Utah, 583 P.2d 50, 53 (1978).

The second issue then is whose claim prevails, looking only at the face of the deeds. Utah's "race-notice" recording act, § 57–3–3, provides:

> Every conveyance of real estate hereafter made, . . . shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof, where his conveyance shall be first duly recorded.

While Kelsch may have first recorded their deed and their deed contained a general description of "all land lying north of the County Road," their metes and bounds description did not include the disputed land, nor was all land north of the County Road conveyed infra. The specific description in chains and degrees prevails over the general reference to the county road, for here the county road is not referred to as a monument.[6] Also, when the face of a deed shows the intention was to convey a specific quantity of land and the metes and bounds would give that quantity, but a reference to a monument would embrace more or less than that quantity, the metes and bounds description should be followed.[7]

In addition, at the time of Kelsch's deed, Corbet still owned the other piece of land north of the road later conveyed to Eliason; thus the reference in Kelsch's deed to "north of the County Road" meant only to affirm the land described by metes and bounds lay north of the road. Therefore, their deed did not include the disputed land.

Neeley's deed included the disputed property and was recorded. Neeley did not know of a conflicting claim and did pay value, and also testified he paid the taxes assessed against the parcel. Thus, under the recording act, Kelsch's claim to the land is void. The final issue is whether Kelsch fulfilled the statutory requirements of adverse possession. One requirement is the payment of all taxes levied and assessed on the land.[8] This Court has held an adverse claimant has the burden of proving full statutory compliance, including the payment of all taxes assessed.[9] Kelsch testified he did not know whether or not he had paid the taxes on the disputed property, and he did not present any evidence of the payment of taxes. Since Kelsch did not carry his burden of proof, the trial court erred in holding adverse possession as an alternative basis for quieting title in Kelsch.

WILKINS and STEWART, JJ., concur.

CROCKETT, C. J., and HALL, J., concur in result.

6. LeBaron v. Crismon, 100 Ariz. 206, 209, 412 P.2d 705, 707 (1966).

7. Thompson on Real Property, § 3053, p. 625 (1962); see Turner v. Creech, 58 Wash. 439, 443, 108 P. 1084, 1085 (1910); Rautenberg v. Munnis, 108 N.H. 20, 23, 226 A.2d 770, 772 (1967), aff'd. on rehearing (other issues) 109 N.H. 25, 241 A.2d 375 (1968); 12 Am.Jur.2d, Boundaries, § 75 (1964); 11 C.J.S. Boundaries § 57 (1938).

8. 78–12–12.

9. Home Owners Loan Company v. Dudley, 105 Utah 208, 141 P.2d 160 (1943).