WEBSTER *v.* BOSCAWEN & a.

Recitals in ancient records and grants are competent evidence of the laying out of ancient highways.

BILL IN EQUITY, under *c.* 43, Laws of 1883, alleging that the plaintiff is in possession of a tract of land described in Boscawen, claiming a freehold therein.   The defendants claim that the land is a legally existing highway.   The plaintiff prays that the title be determined by the court, and for an injunction.   Facts found by the court.   The land described in the bill has been known for more than one hundred years as the old ferry road, which originally ran from King street on Boscawen plain to Clement's ferry on the Merrimack river.   The ferry ceased to be used about 1804. The plaintiff acquired the title and possession of the farm, which includes the disputed tract, January 2, 1889, by warranty deed from Lucia Webster, which reserves "all rights which the town of Boscawen may have in a highway across the northerly portion of said land as now laid out and known as Ferry street."   Prior conveyances of the farm back to 1821 contain no reservation or mention of the ferry road.   The defendants put in evidence a transcript of the town records: "A return of a highway laid out

to Clement's Ferry—Beginning at a stake on King Street two rods south of Moses Gerrish's house lot" and described by courses and distances to the Ferry way—"said way is two rods wide and on the northerly side of said line. Boscawen, July 8, 1780."

"At a legal meeting of the Inhabitants of the town of Boscawen held March 5, 1782, voted that Sam¹ Ames, Capt Peter and Mᵣ Benj Rolfe be a committee to visit . . . the highway laid out to Clements Ferry through the land of Dr. Peterson . . . and see on what condition said ways may be had, and make report at the next meeting thereof." "At a legal meeting of the Inhabitants of Boscawen held May 21, 1782, after hearing the report of the committee for viewing highways, Voted that a wall be made at the charge of the town on the road leading to Clements Ferry, three quarters of the way from the river bank to the road, which is in consideration of damage done Doctor Peterson by taking the road of his land, and agreed to by Dr. Peterson as full satisfaction. Voted Capt Kimball and George Jackman be a committee to get said wall made as cheap as may be." The plaintiff objected to the competency of the first transcript "because the return is not signed by anybody," but it was admitted subject to exception.

Whether the wall was built in accordance with the vote of May 21 did not appear, but it did appear that the road as laid out was used as a public highway in connection with the ferry until the discontinuance of the latter in 1804, and that subsequently, and up to the building of the Northern Railroad in 1846, by which access to the river was cut off, large quantities of logs and lumber were annually drawn over it and floated down the river. From 1846 to 1876 the road continued to be used to quite an extent for hauling wood and lumber to the railroad. Since 1876 it has practically ceased to be used as a public highway; and the only subsequent use made of it by the town was in 1888, when a sewer from King street to the river was built through a portion of it by the town authorities, against the objection of the plaintiff's grantor. For many years, and probably from the beginning, there has been no fence against the road on the plaintiff's side, and so far as appeared gates have always been kept up at the King street entrance or junction. The court finds that the defendants are entitled to a decree, and the plaintiff excepts.

*David F. Dudley, Frank S. Streeter,* and *John H. Albin,* for the plaintiff.

*Willis G. Buxton* and *Daniel Barnard,* for the defendants.

CLARK, J. The exception to the admission of the transcript of the town records of what purports to be a return of a highway laid out to Clement's ferry, because the return is not signed by any one, is not sustained. In *Willey* v. *Portsmouth,* 35 N. H.

303, it is held that reputation, such as recitals in ancient records and grants, is competent evidence of the laying out of ancient highways. The record was a public declaration that a highway had been laid out in the place described; and after the lapse of more than one hundred years the presumption is that it was legally laid out. This record, in connection with the other records produced and the evidence that the road as laid out was used more or less extensively as a public highway until 1876, was evidence sufficient to sustain a finding that the highway was legally laid out. *State* v. *Morse,* 50 N. H. 9 ; *Thompson* v. *Major,* 58 N. H. 242; *Plummer* v. *Ossipee,* 59 N. H. 55 ; *State* v. *Vale Mills,* 63 N. H. 4. The facts found in the case also tend to show a legal highway, with gates at the King street entrance, by twenty years' public use.

*Exceptions overruled.*

BLODGETT and CHASE, JJ., did not sit: the others concurred.