Cheshire
No. 80-041

THURSTON V. WILLIAMS

v.

ELIZABETH T. BABCOCK

March 16, 1981

*McLane, Graf, Raulerson & Middleton*, of Manchester (*Robert A. Wells* orally), for the plaintiff.

*Goodnow, Arwe, Ayer, Prigge & Gardner*, of Keene, and *Upton, Sanders & Smith*, of Concord (*Richard F. Upton* orally), for the defendant.

PER CURIAM. This is an appeal by the plaintiff, and a cross-appeal by the defendant, from a hearing and decision by a Master (*Arthur H. Nighswander*, Esq.), approved by *Contas*, J. The hear-

ing was held after this court had remanded in a prior appeal taken by the plaintiff. *See Williams v. Babcock*, 116 N.H. 819, 368 A.2d 1166 (1976).

In the first appeal (*Williams I*) the plaintiff had filed a petition for declaratory judgment and injunctive relief in which he claimed certain rights in a road running through and past the land of the defendant in the town of Stoddard. The road in question, Carter Hill Road, is described in *Williams v. Babcock, supra* at 820, 368 A.2d at 1168, as follows:

> "Carter Hill Road, runs northeasterly from Shedd Hill Road, a public highway in Stoddard in Cheshire County, for about two miles through land owned by the defendant to a point near Trout Pond. It there intersects with South Road which leads easterly through defendant's land to the town of Windsor. Carter Hill continues northeasterly partially through defendant's land and partially on the boundary between land of plaintiff and that of the defendant to its intersection with North Road which also leads easterly through defendant's land to the town of Windsor. Carter Hill Road itself continues northeasterly and leads to the town of Washington in Sullivan County. That portion of the road running to Trout Pond is presently well maintained by defendant but North Road, South Road and the rest of Carter Hill Road are no more than woods roads, probably passable only by off-road vehicles and on foot."

(*See* unofficial sketch attached to this opinion merely to facilitate following this description.)

In support of his petition the plaintiff introduced evidence to support the following positions: (1) Carter Hill Road was established by prescription prior to its layout by the Town of Stoddard in 1827; (2) a vote of that town to discontinue the road in March 1869 was ineffective because judicial consent was not acquired as mandated by G.S. 1867, c. 65; (3) even if that town vote had complied with that statute, the vote did not extinguish the rights of the public to use the road since these rights were established by prescription prior to the town's formal layout of the road in 1827; (4) regardless of the effect of any action taken by the town in March 1869, Carter Hill Road was established by prescription as a public way after 1869 through twenty years of uninterrupted and continuous use of the road by the public under a claim of right.

The defendant filed three motions to dismiss plaintiff's above petition, one of which was on the ground that the plaintiff had an adequate remedy at law under RSA 234:18-a. This latter motion was granted by the trial court subject to plaintiff's exception, which was transferred to this court. We ruled that the dismissal was improper. *Williams v. Babcock*, 116 N.H. 819, 821, 368 A.2d 1166, 1168–69 (1970).

While the first appeal (*Williams I*) was pending in this court, the plaintiff filed a motion for a new trial in the superior court on the ground that he had discovered certain evidence which he believed would cause the trial court to reverse its earlier decision. *See* RSA 526:1–:3. In view thereof, and for the other reasons set forth in *Williams v. Babcock supra*, we remanded the case to the superior court in the following language:

> "Accordingly, the decision to dismiss plaintiff's petition because of an adequate remedy at law under RSA 234:18 is reversed and the case is remanded so that the master may receive the new evidence and decide the question whether the road existed by prescription before the 1827 layout."

*Williams v. Babcock*, 116 N.H. 819, 824, 368 A.2d 1166, 1171 (1976). The hearing on remand (*Williams II*) was held before a Master (*Arthur H. Nighswander*, Esq.) who ruled that the issue before him was limited to the question "whether the road existed by prescription before the 1827 layout." *See id.* At that hearing, the plaintiff submitted his newly discovered evidence, which was wholly documentary. One of the documents was a copy of Laws 1803, Chapter 53, requiring each locality within the State to conduct an accurate survey and transmit a resulting map to the secretary of state. Also submitted were an ancient plan of the town of Stoddard; a copy of the charter of Stoddard in 1752; and parts of a history of that town from its incorporation in 1774 to 1974, when the history was published.

The defendant, in rebuttal, introduced a newly discovered 1788 layout of the town of Stoddard, which showed the position of the road in question, plus two other exhibits, a 1913 map, and a history of Stoddard, which had also been introduced as exhibits in the first trial. Certain deeds introduced as exhibits in the first trial were also used to establish certain locations on the ground.

■■ The master could properly rule and find on the record that the above 1788 layout was admissible, *Webster v. Boscawen*, 67 N.H. 111, 29 A. 670 (1891), and constituted proof that a highway was lawfully laid out by the Town of Stoddard on November 12, 1788. On the evidence presented, the master could properly find, rule and recommend, as he did, that this 1788 layout began at the Windsor-Stoddard line and extended to what is probably the present Shedd Hill Road. The master disposed of the plaintiff's most important factual claim when he ruled that the section of Carter Hill Road extending from Shedd Hill Road northeasterly to Trout Pond (which section is the focus of plaintiff's claim) existed before the 1827 layout by virtue of the 1788 layout rather than by prescription. In so ruling, he stated: "The evidence of travel after 1788, the evidence that the road serviced several owners as shown by cellar holes and references to owners or persons living on the road, and the evidence of a school house near Trout Pond is all consistent with its being a public road after 1788. The master recommends that it be decreed that the road from Shedd Hill Road in Stoddard to the Town Line of Windsor as laid out by the Selectmen in 1788 . . . and in 1827 . . . was a public highway unless discontinued."

The master next considered the effect of the vote of the Town of Stoddard in March 1869, to discontinue this road. He adverted to G.S. 1867, 65:1, :2 which read as follows:

> "Section 1. Highways in a town may be discontinued by vote of the town; if they extend beyond the limits of the town, they may be discontinued upon petition to the supreme court, and like proceedings thereon as in laying out highways.
>
> Sec. 2. If the highway was not laid out by the selectmen . . . the highway shall not be discontinued without the consent of said court."

The master, in his report, found and ruled in part that: "The road in question extended beyond the limits of the Town of Stoddard and discontinuance might very well affect access to property in an adjoining town or towns. To require that a petition be filed with the Court under those circumstances does not appear to be unreasonable . . . . [T]he only case in point is *Drew v. Cotton*, 68 N.H. 22, 42 A. 239 (1894). . . . In the *Drew* case the Court (*Doe*, J.) in effect ignored the fact that the highway in question extended

into Maine and into another town, stating that it was a highway 'wholly within a town'. . . ." Following *Drew v. Cotton supra,* the master applied the law of that case when he ruled that the vote of the town in 1869 to discontinue the road was legal. The master then suggested that the reasoning of that case was suspect but that he was bound to follow it. It is agreed that no court approval was sought or obtained by the town for the March 1869 discontinuance. The defendant filed a cross-appeal transferring its exception to the recommendation of the master that this court consider overruling *Drew v. Cotton.*

The plaintiff maintains that an analysis of the General Statutes of 1867 shows that the legislature did not give to individual towns the power to alter or lay out roads extending into two or more towns. It must follow, plaintiff argues, that if the legislature did not give to individual towns the power to alter or lay out multi-town roads, it did not give them the power to discontinue such roads, and *Drew v. Cotton,* 68 N.H. 22, 42 A. 239 (1894), must therefore be in error.

In further support of his position, the plaintiff maintains that the *Drew* interpretation of the statute in question (G.L. 1879, 71:1, successor to G.S. 1867, 65:1) violates recognized principles of statutory construction. They are the following: (1) the intent of a statute is determined from its construction as a whole and not by separately construing isolated words or phrases, *Hancock v. Concord,* 114 N.H. 404, 406, 322 A.2d 605, 606 (1974); (2) it is to be presumed that the legislature would not enact legislation which nullifies to an appreciable extent the purpose of a statute, *Kalloch v. Board of Trustees,* 116 N.H. 443, 445, 362 A.2d 201, 203 (1976); and (3) statutes in *pari materia* should be read as a part of a unified cohesive whole. *State Employees Ass'n v. N.H. PELRB,* 118 N.H. 885, 890, 397 A.2d 1035, 1038 (1978), 2A SUTHERLAND ON STATUTORY CONSTRUCTION § 51.03 (1972).

When this road was laid out in 1788, the governing statute was the act of February 27, 1786. 5 LAWS OF N.H. 116. It provided in part as follows:

> "[T]hat at any time hereafter when there shall be occasion for any new highways or private roads to be laid out in any town or parish within this State the selectmen of such town or parish shall be and hereby are empowered upon petition to them exhibited if they see cause to lay out the same whether such highway or road be for the

benefit of the town or public in general or for the benefit of the petitioner or petitioners only. ... ."

This statute provided further in part as follows:

"And in case there shall be occasion for any new highway to be laid out from town to town through several towns or through tracts of land now incorporated, or both or either, in any county within this State the court of general sessions of the peace for such county upon petition to them for that purpose, shall and may, if they see cause lay out or cause to be laid out such highway by a committee to be appointed for that purpose. ... ."

The layout of 1788 could properly be found on the evidence to have begun near the easterly town line of Stoddard and have proceeded westerly to a junction with Carter Hill Road near Trout Pond and then southwesterly to Shedd Hill Road, all located in Stoddard. There was no evidence introduced that the 1788 layout was ever submitted to the court of general sessions of the peace to be laid out. On the contrary the evidence shows it was laid out by the selectmen of Stoddard themselves. Furthermore, there is evidence that the town of Windsor which adjoins the town of Stoddard to the east of the highway in question was not incorporated until 1798. *See* 6 LAWS OF N.H. 277.

A highway discontinuance statute was passed in 1791 (5 LAWS OF N.H. 577). It provided in part as follows:

"And be it further enacted that the Inhabitants of any town in this State at any legal meeting holden for that purpose may discontinue any highway laid out by order of any such town or the Selectmen thereof and where such way was laid out by the Court of General Sessions of the peace then with the Consent of such Court but not without. ... ."

R.S. 1842, 54:1 provided that "[a]ny town at a legal meeting holden for the purpose, may discontinue *any highway in such town.*" (Emphasis added.) Section 2 thereof provided in part that "[n]o vote of discontinuance shall be effectual without the consent of the court of common pleas, if such road *was not laid out by the selectmen* ... ." (Emphasis added.)

Laws 1859, 2219:1 empowered the selectmen of two adjoining towns, upon petition to them, to act as a joint board to lay out

highways extending from town to town. Because a highway extending from one town to another, laid out under the new 1859 statute, was not a highway "within such town" nor a highway "not laid out by the selectmen" (R.S. 1842, c. 54:2; C.S. 1853, 58:2) there resulted a doubt as to what body, if any, had power to discontinue such a highway or any portion thereof. This problem was addressed in G.S. 1867, 65:1 by providing that "[h]ighways in a town may be discontinued by the vote of the town; if they extend beyond the limits of the town, they may be discontinued on petition to the supreme court. . . ."

*Drew v. Cotton,* 68 N.H. 22, 42 A. 239 (1894), dealt with a petition for a writ of mandamus to compel the Town of Eaton to repair a highway in that town which forms a part of a highway leading easterly into the State of Maine and westerly across the town into the town of Madison. The town was ordered to make the necessary repairs, unless it should be held that the highway had been discontinued.

■■ The court's opinion reads in part as follows:

"It is claimed that the town had no power to discontinue the highway, because it extends beyond its limits, or is a part of a continuous thoroughfare extending into other towns. For more than one hundred years, towns have exercised the power to discontinue highways laid out by the selectmen. . . . It has not been understood that this power applied only to highways not connected with others in other towns. . . . The power of selectmen to lay out a highway is confined to their town . . . highways thus laid out are 'highways in a town' within the meaning of the statute [G.L. c. 71, s. 1, which reads the same as G.S 1867, 65:1], which does not expressly or inferentially declare them to be parts of highways in more than one town, because they connect with roads leading into other towns and states. The highway in question having been laid out by the selectmen, and being wholly within the town, was legally discontinued by vote of the town."

*Drew v. Cotton, supra* at 22–23, 42 A. at 240. The evidence on remand shows that the 1788 highway in question was laid out wholly within the town of Stoddard by the selectmen of Stoddard. It was therefore a highway within the town of Stoddard, laid out by the selectmen of that town within the terms of G.S. 1867, 65:1,

:2 and G.L. 1878, 71:1, :2. The fact that the Town of Windsor by its selectmen later laid out a highway in that town which began across the Stoddard line from where the 1788 Stoddard layout began does not make the 1788 layout a highway extending "beyond the limits of the town" of Stoddard which must be discontinued by the consent of the supreme court. G.S. 1867, 65:1. This statute and its successor as interpreted in *Drew v. Cotton*, 68 N.H. 22, 42 A. 239 (1894), was reenacted as P.L. 79:1 and R.L. 95:1 without change. The legislature is thus deemed to have adopted that interpretation of it. *Carter v. City of Nashua*, 116 N.H. 466, 468, 362 A.2d 191, 193 (1976); *Dover Housing Board v. Colbath*, 106 N.H. 481, 483, 213 A.2d 923, 925 (1965).

This interpretation is in line with the common concept which marks the history of the discontinuance provisions of our highway statutes. That is, highways which the selectmen have laid out in their own town can be discontinued by vote of the town. We have considered the arguments of the plaintiff asking us to overrule the interpretation placed on these highway discontinuance statutes by *Drew v. Cotton supra*. The usual considerations for overruling, changing conditions and lessons of experience, do not demonstrate a need to overrule that interpretation. *See* R. LEFLAR, APPELLATE JUDICIAL OPINIONS, ch. 6 (1974). RSA ch. 238 seems to indicate a legislative trend away from involving the judiciary in the discontinuance of highways as such.

■ We therefore uphold the recommendation of the master "that the discontinuance of Carter Hill Road from Gilman Stacy's house to the Windsor line by vote of the Town of Stoddard in 1869 was legal." Furthermore as the road became public in 1788, no prescriptive rights could accrue by public use from 1788 to 1869. *Williams v. Babcock*, 116 N.H. 819, 824, 368 A.2d 1166, 1171 (1976); *White Mt. &c. Co. v. Levesque*, 99 N.H. 15, 17, 104 A.2d 525, 527 (1954).

■ We next consider plaintiff's exception to the refusal of the master to consider and decide the issue of whether Carter Hill Road was established as a public way or a private easement by prescription subsequent to the March 1869 town vote to discontinue the road. The mandate of this court which the master was carrying out on the remand read in part as follows: "[T]he case is remanded so that the master may receive the new evidence and decide the question whether the road [Carter Hill Road] existed by

prescription before the 1827 layout." *Williams v. Babcock*, 116 N.H. 819, 824, 368 A.2d 1166, 1171 (1976). In carrying out such a mandate the trial court is limited to the specific direction of the mandate as interpreted in the light of the opinion. It follows that the trial court cannot adjudicate a right not within the scope of the remand even though it may be one that the appellate court might have directed. *Cf. Scarborough v. R.T.P. Enterprises*, 120 N.H. 707, 422 A.2d 1304 (1980); *Nowell v. Nowell*, 163 Conn. 116, 121, 302 A.2d 260, 264 (1972); 5 AM. JUR. 2d *Appeal and Error* §§ 991 n.9, 992 (1962).

The issue whether, after March 1869, the Carter Hill Road was established as a public or private way by prescription was an issue in *Williams v. Babcock*, 116 N.H. 819, 368 A.2d 1166 (1976). In that first trial the master granted the defendant's following requests for findings and rulings:

> "The petitioner's evidence does not establish any period of continuous use of the so-called Carter Hill Road by the public or landowners, other than petitionee and her predecessors in title, since the discontinuance of said road in the 1860's.
>
> Neither the public, nor any landowners, other than petitionee and her predecessors in title, have acquired any rights over that portion of the road referred to as the Carter Hill Road which passes through and is surrounded by petitionee's property, since the discontinuance of said road in the 1860's."

The above finding and ruling were approved by the trial court and would have been overruled on appeal to this court if erroneous in law or not supported by the evidence. Furthermore, plaintiff was not prepared to offer any additional evidence thereon on the remand, stating that "[t]he evidence is in the record upon which the Court could make rulings."

We hold that the only issue to be considered on the remand hearing was whether the evidence offered at the first hearing, along with the additional evidence offered in *Williams II*, warranted or required a finding and ruling that Carter Hill Road existed by prescription before the 1827 layout. Consequently, the master's failure to decide whether a public way or private easement was established after 1869 was not error.

We hold further that the master properly recommended "that it be decreed that the road from Shedd Hill Road in Stoddard to the

Town Line of Windsor as laid out by the Selectmen in 1788 was a public highway unless discontinued."

We also hold that the master properly ruled that under *Drew v. Cotton*, 68 N.H. 22, 42 A. 239 (1894), the discontinuance of Carter Hill Road from Gilman Stacy's house to the Windsor line by vote of the Town of Stoddard in 1869 was legal. Furthermore, we find no convincing reason for overruling *Drew v. Cotton supra*, and the order is

*Affirmed by an equally divided court.*

KING, J., did not participate; GRIMES, C.J., and BROCK, J., dissented.

GRIMES, C.J., and BROCK, J., dissenting: In our view, G.S. 1867, 65:1 prohibits the discontinuance of a highway without court approval if it in fact physically extended beyond the limits of the town at the time of the discontinuance. The purpose of the section, it seems to us, is to prevent a town from discontinuing a highway which in fact extends into another town, thus cutting off access by the traveling public from the other town's line. At the time of the discontinuance in 1869, the road in question extended into the towns of Windsor and Washington regardless of how it was originally laid out. We would overrule *Drew v. Cotton*, 68 N.H. 22, 42 A. 239 (1894), and hold that without the approval of the court the discontinuance was invalid.

NORTHEAST SECTION OF STODDARD
(ROUGH SKETCH)

🙝🙝🙝🙝🙝🙝🙝🙝 BOUNDARY OF WILLIAMS' LAND
Xxxxxxxxxxxx BOUNDARY OF BABCOCK LAND

FIGURE A
(SEE EXS. 1 AND 10)